# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES INTERNATIONAL TRADE COMMISSION<br><br>Petitioner,<br><br>v.<br><br>ATMEL CORPORATION<br><br>Respondent. | No. 1:05-mc-00355-RMU<br><br>Judge Ricardo M. Urbina |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PETITION FOR AN EXPEDITED ORDER TO ENFORCE SUBPOENA
ISSUED BY THE UNITED STATES INTERNATIONAL TRADE COMMISSION**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ...................................... 2

    A.    STMicro's Overbroad Subpoena *Duces Tecum* and *Ad Testificandum* ........................................................................... 2

    B.    The Breadth Of STMicro's Subpoena Necessitated Atmel's Motion To Quash ................................................................................. 3

    C.    The ALJ's Modified Subpoena In Order No. 10 Was Even More Broad, Necessitating Atmel's Motion For Reconsideration ................... 4

    D.    Atmel's Compliance And Effort To Reach Compromise With The Burdensome Portions Of Order No. 11 ........................................... 5

    E.    The ALJ's Refusal To Modify The Protective Order Prevented A Simple Resolution of the Subpoena Dispute ..................................... 9

III.  ARGUMENT AND AUTHORITIES ........................................................ 10

    A.    Legal Standard For Enforcement Of An Agency Subpoena ................. 10

    B.    Enforcement Of The Subpoena Is Not Reasonable Under The Present Circumstances And Exceeds The Commission's Authority ................... 11

        1.    Enforcement Under the Present Circumstances is Unreasonable ................................................................... 12

        2.    The Commission's Order Reflects A Lack Of Procedural And Substantive Due Process .................................................. 13

            a)    Atmel has Been Held to an Unreasonably High Standard Throughout this Dispute ................................. 13

            b)    The Commission's Failure to Review Atmel's Positions Before Ordering Enforcement Reflects a Lack of Due Process .......................................... 13

    C.    The Document Requests As Modified By Order No. 11 Are Not Reasonably Relevant To The Commission's Investigation ................... 14

        1.    The Requested Documents are not Relevant in Determining the State of the Art ........................................................... 16

2. Documents Created After April 13, 1989, Cannot Constitute Prior Art ........................................................ 17

D. The Document Requests As Modified By Order Nos. 10 and 11 Are Unreasonable And Unduly Burdensome ....................... 18

 1. Hardship to Atmel ................................................ 19

  a) The Process of Identifying Documents Responsive to the Modified Requests is Unduly Burdensome Under the ALJ's Orders ...................................... 19

   (1) The Subpoena Requests as Modified by Order No. 10 Required Atmel to Undertake a Costly and Time Consuming Two-Step Inspection ............................................ 19

   (2) The ALJ's Modifications of the Subpoena Requests in Order No. 11 were Inadequate ............. 21

  b) Order Nos. 10 and 11 Place an Unreasonable Burden on a Disinterested Non-Party ..................... 22

   (1) The Court Should Consider Atmel's Status as a Disinterested Non-Party to the Underlying Investigation ......................... 22

   (2) STMicro Failed to Make a Reasonable Inquiry and Exhaust Other Sources Before Burdening Atmel with the Subpoena Requests at Issue ...................................... 23

   (3) The Fact that STMicro is its Competitor Creates Additional Burden for Atmel ............... 25

  c) The ALJ's Refusal to Accept Atmel's Proposed Safeguards with Respect to the Confidential and Privileged Nature of its Documents was Unreasonable and Places an Undue Burden on Atmel .............................................. 26

   (1) The Confidential Nature of Atmel's Documents Should be Considered when Balancing the Hardship to Atmel with the Commission's Purported Need for the Documents ........................................ 27

(a)     The Protective Order Issued in the Underlying Investigation does not Adequately Protect Atmel's Confidential Information Used at the Commission ......................................................... 28

(b)     The Protective Order Issued in the Underlying Investigation does not Adequately Protect Atmel's Confidential Information Used in District Court Litigation........................................ 30

(2)     The ALJ's Refusal to Amend the Protective Order to  Include Atmel's Privilege Safeguard was Unreasonable ............................................ 32

2.     The Commission has not Shown a Need for the Documents Requested in Order Nos. 10 and 11 .......................................................... 34

E.     The District Court Has The Authority To Draft An Order  That Takes Atmel's Proposed Safeguards Into Account ............................... 35

IV.     CONCLUSION............................................................................................... 37

# TABLE OF AUTHORITIES

Cases

*ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082 (Fed. Cir. 2003)............................................. 16, 17

*Am. Metal Prods. Co. v. Gutter Topper, Ltd.*, No. M 8-85, 1997 WL 666291
   (Oct. 24, 1997) .................................................................................................................. 26

*Am. Standard, Inc. v. Pfizer, Inc.*, 828 F.2d 734 (Fed. Cir. 1987) ................................................ 23

*Cusumano v. Microsoft Corp.*, 162 F.3d 708 (1st Cir. 1998) ......................................................... 23

*E.E.O.C. v. C & P Tel. Co.*, 813 F. Supp. 874 (D.D.C. 1993)......................................................... 27

*Exxon Corp. v. F.T.C.*, 588 F.2d 895 (3d Cir. 1978) .............................................................. 27, 35

*F.T.C. v. Dresser Indus., Inc.*, Misc. No. 77-44, 1977 WL 1394 (D.D.C. 1977) ......................... 28

*F.T.C. v. Standard Oil Co.*, 1979 WL 1663 (D.D.C. 1979)..................................................... 27, 28

*Haworth, Inc., v. Herman Miller, Inc.*, 998 F.2d 975 (Fed. Cir. 1993) ................................. 24, 25

*Home Diagnostics, Inc. v. Lifescan, Inc.*, 381 F.3d 1352 (Fed. Cir. 2004) ................................. 16

*Katz v. Batavia Marine & Sporting Supplies*, 984 F.2d 422 (Fed. Cir. 1993)....................... 23, 34

*Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 78 F.3d 540 (Fed. Cir. 1996) ................................... 18

*Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318 (Fed. Cir. 1990) ......................... passim

*NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005) ....................................... 17

*Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186 (1946)................................................. 10

*SEC v. Brigadoon Scotch Distrib. Co.*, 480 F.2d 1047 (2d Cir. 1973).......................................... 36

*Solarex Corp. v. Arco Solar, Inc.*, 121 F.R.D. 163 (E.D.N.Y. 1988) ........................................... 23

*Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207 (Fed. Cir. 1987).......................... 15

*United States Int'l Trade Comm'n v. E. & J. Gallo Winery*, 637 F. Supp. 1262
   (D.D.C. 1985) ............................................................................................................... passim

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950).................................................................. 14

*Univ. of Penn. v. EEOC*, 493 U.S. 182 (1990) ............................................................................... 27

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996)......................................... 16

*Winbond Elecs., Inc. v. United States Int'l Trade Comm'n*, 262 F.3d 1363 (Fed. Cir. 2001)....... 33


Statutes

15 U.S.C. § 50.................................................................................................................................. 28

19 U.S.C. § 1333(a) ........................................................................................................................ 11

19 U.S.C. § 1333(b) ........................................................................................ 12

19 U.S.C. § 1337(n) ........................................................................................ 28

28 U.S.C. § 1659(b) ........................................................................................ 30

35 U.S.C. § 252 .............................................................................................. 17

Rules

16 C.F.R. § 4.10(a)(2) ..................................................................................... 28

19 C.F.R. § 210.27(d)(2)(iii) ........................................................................... 24

19 C.F.R. § 210.32 ............................................................................................ 3

19 C.F.R. § 210.34 .......................................................................................... 26

19 C.F.R. § 210.43(d)(2) ................................................................................. 14

Fed. R. Civ. P. 26(g) ....................................................................................... 24

Administrative Decisions

*Certain HSP Modems, Software and Hardware Components Thereof, and*
*Products Containing Same,* Inv. No. 337-TA-439, Order No. 59 (May 16, 2001) ................. 12

*Certain Optical Waveguide Fibers,* Inv. No. 337-TA-189, Request for Judicial
Enforcement of Non-Party Subpoena, GC-84-179 (Oct. 25, 1984) .................... 23, 24

*Certain Rotary Wheel Printers,* Inv. No. 337-TA-145, Interlocutory Appeal
(Sept. 2, 1983) ................................................................................................. 32

*Certain SDRAMS, DRAMS, ASICS, RAM and Logic Chips, Microprocessors,*
*Microcontrollers, Processes for Manufacturing Same,* Inv. No. 337-TA-404,
Order No. 6 (Jan. 6, 1998) ........................................................................... 30, 31

*Certain Set-Top Boxes and Components Thereof,* Inv. No. 337-TA-454, Order No. 16
(July 2, 2001) ................................................................................................. 23

Pursuant to this Court's September 14, 2005, Minute Order, respondent Atmel Corporation ("Atmel") hereby respectfully submits its opposition to the International Trade Commission's ("Commission") petition for an expedited order to enforce an administrative subpoena.

## I.  INTRODUCTION

Throughout the course of this discovery dispute the Administrative Law Judge ("ALJ") and Commission have acted in an arbitrary and unreasonable manner.  Indeed, had the ALJ granted Atmel's request to amend the protective in June, the parties to the underlying investigation would have had access to the information approximately six weeks before the scheduled evidentiary hearing.  Moreover, amending the protective order at that time would have avoided costly motions practice and the waste of judicial resources.  Despite these practical considerations and despite Atmel's legitimate concerns for protecting the confidential and privileged nature of its documents, the ALJ and Commission twice rejected Atmel's request.

The ALJ and Commission's course of action has been, and continues to be, clearly unreasonable in light of the overly broad and unduly burdensome scope of the subpoena requests at issue even as modified in the second order.  For its part, Atmel provided unrebutted, sworn declarations quantifying the burden at tens of thousands of dollars and hundreds of personnel hours.  In addition, Atmel produced hundreds of pages of public documents *before* the ALJ's initial deadline and participated in frequent negotiations with respondents STMicroelectronics N.V. and STMicroelectronics, Inc. (collectively "STMicro") to institute reasonable safeguards for Atmel's confidential and privileged documents, which would allow a review despite the unreasonable nature of the requests.  Tellingly, neither the ALJ nor the Commission provided any explanation sufficiently defending the breadth of the subpoena requests or the choice to ignore Atmel's proposals.  Similarly, STMicro failed to explain why it chose to seek documents from a disinterested non-party before exhausting other sources.

Notwithstanding Atmel's good faith efforts to comply with the subpoena, and a complete lack of evidence supporting the propriety of the subpoena as issued, the Commission now seeks judicial enforcement thereof.    As fully detailed herein, the Commission's position is not supported in law or fact and should be rejected.    In the alternative, this Court should grant enforcement only on condition that Atmel's five proposed safeguards are incorporated into the existing protective order, or issue a separate order including those additional protective measures.    These conditions would alleviate Atmel's concerns, reduce its burden and risk, and would allow the parties access to the documents.    The fact that the ALJ rejected such a practical approach makes enforcement of the subpoena all the more unreasonable.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

The Commission's account of the factual and procedural background of this dispute is incomplete and misleading.    Specifically, the Commission fails to acknowledge, *inter alia*, the well-documented burden on Atmel, and its good faith efforts to achieve reasonable solutions to resolve the overly broad scope of the subpoena and the protective order and privilege issues.    Such distortion of the facts unfortunately leads to the inaccurate portrayal of Atmel as an obstructionist non-party, unwilling to abide by the ALJ's orders and the Commission Rules.    For that reason, clarification and additional explanation of the factual and procedural background is needed.

### A. STMicro's Overbroad Subpoena *Duces Tecum* and *Ad Testificandum*

On March 24, 2005, the ALJ issued a subpoena *duces tecum* and *ad testificandum*[1] directed to non-party Atmel at the request of STMicro.[2]    The subpoena requested a broad range

---

[1] The Commission only seeks to enforce the portion of the subpoena requiring the production of documents.    (*See* Commission Petition at 2 n.1.)

of documents and testimonial discovery from Atmel related to its memory designs and license agreements covering almost thirteen (13) years of activity. (*See generally* Subpoena *Duces Tecum* and A*d Testificandum*, Attachment A to Commission Petition.)    After receiving the subpoena, Atmel and its counsel contacted STMicro's counsel in order to narrow the scope of the subpoena and develop a better understanding of what specific information STMicro was seeking. Notwithstanding these discussions, STMicro refused to grant an extension of time to respond to the subpoena unless Atmel waived its right to object or move to quash. (*See* March 30, 2005, letter from T. Jezek to C. Bright, attached hereto as Exhibit 1.)    As a result, on April 11, 2005, Atmel moved to quash the subpoena in question. (*See* Atmel's Motion to Quash, attached hereto as Exhibit 2.)

### B. The Breadth Of STMicro's Subpoena Necessitated Atmel's Motion To Quash

In its motion to quash, Atmel explained that the subpoena was overly broad and imposed an undue burden because much of the information requested was irrelevant to the investigation, was easily obtainable from other sources and because the cost of separating relevant, responsive documents from the far more numerous irrelevant documents would impose a substantial and costly burden on Atmel. (Ex. 2 at 4.)    Atmel detailed this burden in sworn declarations.    Atmel also explained STMicro's complete lack of diligence in exhausting other sources before burdening a disinterested non-party. (*Id.* at 4-5.)    Specifically, Atmel noted STMicro's failure to search publicly available product information, reverse engineer publicly available parts and/or contact commercial engineering laboratories that specialize in technical analysis of the semiconductor devices of many companies including Atmel. (*Id.* at 5; Atmel Motion for

---

[2] Unlike the procedure in federal district court, subpoenas are issued by the presiding ALJ for the benefit of a requesting party. *See* 19 C.F.R. § 210.32.

Reconsideration/Interlocutory Review of Order No. 10 at 14-17, attached hereto as Exhibit 3.) In addition, Atmel explained that because STMicro's requests related, in large part, to highly confidential documents and information, including trade secrets, Atmel would need protection for its documentation, and because of the nature and breadth of the requests any search would be especially time consuming and expensive. (*Id.* at 5.) Finally, Atmel moved to quash the subpoena on the ground that STMicro promised, yet failed to provide, a list of individuals who signed or intended to sign the protective order issued in the investigation and would have access to confidential business information produced by Atmel. (Ex. 2 at 7.)

### C. The ALJ's Modified Subpoena In Order No. 10 Was Even More Broad, Necessitating Atmel's Motion For Reconsideration

On April 22, 2005, the ALJ issued Order No. 10, which granted in part and denied in part Atmel's motion to quash the subpoena that was issued earlier by the same ALJ. (*See* Order No. 10, Attachment B to Commission Petition.) In that order, the ALJ compelled Atmel to make available for inspection and copying no later than the close of business on May 4, 2005, *all* of Atmel's confidential circuit designs up until July 1997, including, but not limited to those related to non-volatile memory.[3] (Order No. 10 at 8-9.) The ALJ quashed the subpoena with respect to requiring live testimony. (*Id.* at 9.) In addition, the ALJ ordered STMicro to notify Atmel of individuals who later subscribe to the protective order. (*Id.* at 7.)

On May 3, 2005, Atmel moved for reconsideration of Order No. 10, or in the alternative, for interlocutory review of the order. Atmel contended, *inter alia*, that Order No. 10 was unduly burdensome because the ordered production of documents extended far beyond the scope of STMicro's original requests. (Ex. 3 at 4-5.) Specifically, Atmel pointed to the language of the

---

[3] The subpoena in question requested documents and information limited to non-volatile memory. (Commission Petition, Attachment A.)

order requiring Atmel to produce "[a]ll documents that are sufficient to show Atmel circuit designs conceived or developed prior to July 8, 1997." (*Id.* at 5.) However, the burden placed on Atmel did not derive solely from the wording of the subpoena. STMicro's lack of diligence in first seeking the requested information from public sources and/or SanDisk[4] in order to obviate, or at least narrow Atmel's search, created additional difficulty for Atmel. (*Id.* at 14-17.) Further, Atmel again raised its concerns regarding the sufficiency of the protective order and STMicro's compliance therewith. (*Id.* at 9-12, 19-20.)

### D. Atmel's Compliance And Effort To Reach Compromise With The Burdensome Portions Of Order No. 11

Notwithstanding these obstacles and contrary to the statements in the ALJ's order, Atmel complied with several requests in Order No. 10. On May 4, 2005, Atmel produced approximately 750 pages of documents responsive to Document Request No. 16.[5] In addition, Atmel searched for and confirmed that it did not have any documents responsive to Document Request No. 20 regarding patent studies and analyses. (Ex. 4 ¶ 10.) Atmel moved for reconsideration of the remainder of the requests in the subpoena because, as noted above, they were even broader than the original requests.

On May 12, 2005, the ALJ issued Order No. 11, granting in part Atmel's motion for reconsideration. (*See* Order No. 11, Attachment C to Commission Petition.) In that order, the ALJ recognized the overly broad language used in Order No. 10 and, accordingly, modified

---

[4] SanDisk Corporation is the Complainant in the Commission investigation.

[5] On April 29, 2005, Julie Mar-Spinola, Atmel's President of Global Affairs – Litigation and Intellectual Property, began a search for documents responsive to the subpoena. (*See* May 3, 2005, Supp. Decl. of Julie Mar-Spinola, attached hereto as Exhibit 4.) Ms. Mar-Spinola indicated that she found only two databooks related to non-volatile memory products in Atmel's possession from the late 1980's. (*Id.*) Atmel produced these databooks to STMicro on May 4, 2005. (*See* May 4, 2005, letter from S. Lasher to J. Quarles, attached hereto as Exhibit 5.)

STMicro's document requests. (*See* Order No. 11 at 7-8.) With respect to Atmel's contention that it should not be ordered to produce confidential information without adequate safeguards, the ALJ indicated that STMicro's supplementation of its list of protective order signatories was sufficient to assuage any of Atmel's concerns. (*Id.* at 6.)[6] The ALJ ordered Atmel to produce responsive documents no later than the close of business on May 27, 2005. (*Id.* at 8.) But, while the requests were narrowed somewhat, identifying specific documents remained problematic and burdensome. In fact, as fully described below in Section III.D.1, the requests still sought thirteen (13) years of Atmel circuit designs, which for Atmel to complete would have imposed a huge burden in time and expense. (*See* Ex. 4.) Atmel, however, continued to reach an amicable solution directly with STMicro.

Over the few weeks following the issuance of Order No. 11, and despite Atmel's in-house counsel's involvement in a two-week binding arbitration hearing in New York, counsel for Atmel and counsel for STMicro discussed the timing of Atmel's possible production. (July 14, 2005 Decl. of Barbara Murphy ¶¶ 2-4, attached hereto as Exhibit 6.) Counsel for Atmel informed counsel for STMicro that Atmel was attempting to quantify the search time for responsive documents. (*Id.* ¶ 4.) In order to accelerate the process, on May 17, 2005, counsel for STMicro for the first time agreed to limit the search for documents to those related to two specific Atmel

---

[6] As an alternative, the ALJ stated that Atmel had the opportunity to move for a more specific protective order under Commission Rule 210.34(a). (*Id.* at 6.) The Commission now claims that Atmel's concerns regarding the protective order were merely dilatory tactics, partially due to the fact that Atmel never moved for a protective order. (*See* Commission Petition at 15.) However, the Commission ignores (or intentionally omits) the fact that the ALJ specifically admonished Atmel for engaging in "expensive motions practice." (Order No. 11 at 4.) Under these circumstances, it was certainly reasonable for Atmel to try and negotiate a stipulation with STMicro before filing a motion with the ALJ.

part numbers and one SEEQ[7] part number. (*Id.*) Counsel for Atmel specifically stated that, even with STMicro's limitation, the search still resembled "looking for a needle in a haystack." (*Id.*) It was the search for the needle that was the source of the expense.

On June 2, 2005, only *three business days* after the date ordered for compliance with Order No. 11, Atmel sent STMicro a letter informing it that Atmel had in fact located responsive documents related to two of the three Atmel parts. (*See* June 2, 2005, letter from B. Murphy to J. Baldwin, attached as Exhibit 7.)  In addition, Atmel informed STMicro that there was also a larger volume of documents that contained information on SEEQ parts which were potentially responsive to Order No. 11. (*Id.*)  Atmel indicated that it was prepared to make these documents immediately available for inspection and copying provided that certain extra safeguards, which were previously discussed in general terms in Atmel's briefing, would be implemented.  (*Id.*) Specifically, Atmel requested that the following stipulations be adopted by the parties to the investigation:

1. Regardless of any other amendments to the Protective Order that may permit sharing of information among corporate representatives, documents and materials produced by Atmel that contain confidential business information (hereafter "Atmel's Confidential Information") will be viewed by outside attorneys' eyes only;

2. Atmel's Confidential Information is being provided solely for use in this investigation and cannot be used for any other purpose, including in the corresponding district court action between the parties, and in no event can be used against Atmel;

3. Before any of Atmel's Confidential Information is produced to anyone other than an outside attorney of record representing one of the parties or to personnel of the U.S. International Trade Commission, Atmel must be informed in writing of the identity of the expert or consultant, in a manner

---

[7] Atmel acquired SEEQ's non-volatile business unit several years ago. (April 11, 2005 Decl. of Julie Mar-Spinola ¶ 7, attached as Exhibit 8.)  All or substantially all SEEQ products use non-volatile memory. (*Id.*)

consistent with Paragraph 15 of the Protective Order. Written notice must be sent to:

> Julie Mar-Spinola
> VP-Global Affairs, Litigation & Intellectual Property
> Atmel Corporation
> 2325 Orchard Parkway
> San Jose, California 95131
> Tel: (408) 441-0311;

4. Notwithstanding Paragraph 18 of the Protective Order, upon final termination of the investigation, all copies of Atmel's Confidential Information, including without limitation, any notes pertaining to same, must be returned to Atmel, along with written certification by the returning party's counsel that all such copies have been returned and that no copies of documents or notes including information derived from Atmel's Confidential Information has been retained; and

5. Notwithstanding Atmel's production of these documents for inspection or otherwise, the parties agree (1) that they will not use any privileged material those documents may contain, and (2) that Atmel does not waive its attorney-client privilege or work product immunity in the event such documents are included in the production.

(Ex. 7 at 2.)

Between June 2 and June 10, 2005, counsel for Atmel and STMicro exchanged correspondence and conducted telephone conversations in efforts to reach an agreement on these additional safeguards not contained in the existing protective order and to arrange for an appropriate time and place for production of Atmel's documents. (See Ex. 6 ¶ 6.) As set forth in Ms. Murphy's June 13, 2005, letter, and reiterated in her June 28 and June 30, 2005, letters, Atmel and STMicro had agreed on Points 1, 3 and 4 and were close to reaching an agreement on Points 2 and 5. (See Exs. 9-11, respectively.) Following the June 28 and June 30, 2005, letters, however, STMicro made no effort to contact Atmel's counsel to finalize the safeguards Atmel originally requested, and to which STMicro had substantially agreed. Instead, STMicro waited until July 11, 2005, and filed a motion for enforcement with the ALJ.

### E. The ALJ's Refusal To Modify The Protective Order
### Prevented A Simple Resolution of the Subpoena Dispute

On July 14, 2005, Atmel filed an opposition to STMicro's motion for judicial enforcement. (Opposition to Motion for Judical Enforcement, attached as Exhibit 12.) Therein, Atmel explained that the parties had reached agreement on most of Atmel's proposed safeguards and "[a]ll that remains is to clarify STMicro's obligations concerning the use of documents produced by Atmel as set forth in Point 2 of Atmel's requested stipulations and to address Atmel's concerns as to potential waiver of the attorney-client privilege [Point 5]." (Ex. 12 at 3.) Under these circumstances, Atmel requested that the motion to enforce be denied so the parties could reach an agreement on the two remaining contested issues. (*Id.* at 7.) In the alternative, Atmel requested that the ALJ amend the protective order accordingly to protect Atmel's confidential business information and expedite resolution of this dispute. (*Id.*)

The very next day, on July 15, 2005, the ALJ issued an initial determination granting STMicro's motion and certifying Order No. 11 to the Commission for judicial enforcement. (*See* Order No. 19, Attachment D to Commission Petition.) In that order, the ALJ found that Atmel failed to comply with Order No. 11 and that Atmel's proposed additional safeguards were allegedly addressed by the existing protective order and/or unnecessary. (Order No. 19 at 2-3.) Further, the ALJ found that Atmel's request to amend the protective order was untimely, and, as such, procedurally defective. (*Id.* at 5.) Although the ALJ acknowledged that the scope of the subpoena had been narrowed by Order No. 11 and STMicro's agreement to seek documents related only to three specific parts, the ALJ ignored the fact that the agreement was reached on May 17, 2005, before the deadline for production. (*See* Order No. 11 at 1-2.) The ALJ also failed to consider that the parties had been discussing and negotiating the protective order and privilege issues since as early as June 2, 2005. (Order No. 19 at 5 ("[N]either the staff nor

respondents have had the opportunity to respond to Atmel's inadvertent waiver position.").)

Moreover, *all* parties were copied on correspondence in early to mid June addressing Atmel's

proposed amendments to the protective order, including the privilege issue. (*See, e.g.,* Ex. 9;

June 9, 2005 letter from J. Baldwin to J. Yoon and J. Cockburn, attached as Exhibit 14.)

On July 22, 2005, Atmel filed a petition for review of Order No. 19 with the

Commission.[8]  Again, Atmel explained that judicial enforcement was unnecessary based on the

parties' previous, largely successful attempts to reach a common-sense solution that would

enable STMicro to review Atmel's documents, and, at the same time, protect the confidential

nature of those documents and any privileged materials they contained, and reduce the burden

and expense to Atmel. (Ex. 13 at 2-3.) Atmel also reiterated its request for an amendment to the

protective order. (*Id.* at 13.)

On August 23, 2005, the Commission granted the ALJ's request for judicial enforcement.

The Commission did not, however, treat Order No. 19 as an initial determination, and, as such,

improperly failed to undertake the review required by Commission Rule 210.43 and requested by

Atmel.  On September 2, 2005, the Commission filed its Petition for Enforcement with this

Court.

## III.     ARGUMENT AND AUTHORITIES

### A. Legal Standard For Enforcement Of An Agency Subpoena

In *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186 (1946), the Supreme Court

stated that an agency has a right to judicial enforcement of its subpoena if it is for a lawfully

authorized purpose, the information sought is relevant, and the demand is reasonable. *Id.* at 209.

---

[8]  Atmel filed a Corrected Petition for Review on July 25, 2005, which is attached hereto as Exhibit 13.  The Corrected Petition merely included non-substantive changes to exhibit references.

As the Commission correctly notes, this Court has applied these general principles to the enforcement of Commission subpoenas and concluded that the appropriate standard of review recognizes both the "reasonably relevant" and the "unreasonably or unduly burdensome" tests. *See United States Int'l Trade Comm'n v. E. & J. Gallo Winery*, 637 F. Supp. 1262, 1267 (D.D.C. 1985).

Although a district court's role in enforcing an administrative subpoena is somewhat limited, the investigative powers of an agency remain "subject to judicial review to protect against mistaken or arbitrary orders." *ASAT, Inc.*, 411 F.3d at 253 (internal quotations omitted). In that regard, the D.C. Circuit recently clarified the district court's role in subpoena enforcement proceedings. In *ASAT, Inc.*, the D.C. Circuit found that the district court erred by refusing to revisit the ALJ's findings and stated:

> [T]he Court has not gone so far as to preclude the district court from examining whether the Commission exceeded its authority in light of ASAT, Inc.'s challenge to the ALJ's determination that it had control of the subpoenaed documents.

*Id.* at 254. Therefore, an ALJ's findings are not entitled to complete and unfettered deference and should be reviewed by the district court in an enforcement proceeding.

Moreover, a non-party seeking protection from discovery may rely on the inherent power of the court. *Micro Motion, Inc. v. Kane Steel Co.,* 894 F.2d 1318, 1322 (Fed. Cir. 1990), (citing 5A J. Moore & J. Lucas, Moore's Federal Practice, Sec. 45.05[3] at 37 (2d ed. 1989), or Fed. R.Civ.P. 45(b)).

### B. Enforcement Of The Subpoena Is Not Reasonable Under The Present Circumstances And Exceeds The Commission's Authority

Atmel does not dispute the Commission's statutory authority to issue subpoenas when conducting an investigatory proceeding. Such power is expressly granted in 19 U.S.C. § 1333(a). Nor does Atmel challenge the Commission's right to seek enforcement of its subpoenas

in district court pursuant to 19 U.S.C. § 1333(b). The decision as to *when* an enforcement proceeding may be initiated, however, is governed by Commission policy and law. The district court has a responsibility "'to protect against mistaken or arbitrary [agency] orders.'" *ASAT, Inc.*, 411 F.3d at 253. Here, the Commission's order granting the ALJ's request for subpoena enforcement was unreasonable and arbitrary and should be rejected.

## 1. __Enforcement Under the Present Circumstances is Unreasonable__

Judicial enforcement of a subpoena should be denied absent a clear showing of failure to comply with the subpoena. *See Certain HSP Modems, Software and Hardware Components Thereof, and Products Containing Same*, Inv. No. 337-TA-439, Order No. 59 (May 16, 2001). There has been no such showing here. In fact, the record confirms that Atmel has been more than reasonable in response to STMicro's discovery requests.[9] As Atmel has explained in its prior submissions, the subpoenas issued to Atmel, and the ensuing orders, were overbroad and burdensome. (Ex. 2 at 3-6; Ex. 3 at 9-17; Ex. 12 at 4-7; Ex. 13 at 8-13.) Furthermore, Atmel has appropriately requested that the scope of the subpoena be limited and that its concerns regarding confidentiality be addressed. Atmel was conducting an extensive search of its records and archives for responsive documents, a monumental and very expensive task, while negotiations with STMicro were ongoing. Atmel produced several hundred pages of public documents on May 4, 2005. Since early June, Atmel has had available for production several hundred additional documents, along with now 50 boxes of documents available for review, once the confidentiality and privilege issues have been addressed. Atmel offered to make the documents available for review so that it could avoid the expense of finding the responsive documents and

---

[9] It should be noted that the subpoena in question was issued for the benefit of STMicro, not the Commission itself. Therefore, STMicro's actions in this dispute should be taken into account when determining reasonableness.

conducting a privilege review on the entire population. Such actions certainly are not those of a non-party refusing to comply with a subpoena. Rather, Atmel is simply seeking a moderate, reasonable, and common-sense accommodation to adequately protect its interests and avoid wasting resources. The Commission's choice to seek enforcement of the subpoena when Atmel is clearly attempting to respond to it despite the incredible burden, is inimical to Commission policy and law.

### 2. The Commission's Order Reflects A Lack Of Procedural And Substantive Due Process

#### a) Atmel has Been Held to an Unreasonably High Standard Throughout this Dispute

From the outset of this discovery dispute, Atmel has been held to a higher and less reasonable standard than other non-parties when opposing an overly broad and burdensome subpoena. Indeed, the ALJ alluded to Atmel's representation "by counsel that has repeatedly appeared in section 337 investigations." (Order No. 19 at 2.) This is entirely irrelevant to whether the discovery sought from Atmel is proper or whether the protective order meets Atmel's confidentiality concerns. Moreover, as Order Nos. 10 and 11 make clear, Atmel's arguments and concerns have been consistently ignored or de-emphasized by the ALJ. (*See generally* Order Nos. 10 and 11.) For this reason, Atmel has twice attempted to present its positions before the Commission. (*See* Exs. 3 and 13.) However, in neither situation did the Commission meaningfully review Atmel's position.

#### b) The Commission's Failure to Review Atmel's Positions Before Ordering Enforcement Reflects a Lack of Due Process

In response to Order No. 10, Atmel filed a motion for reconsideration, or in the alternative, motion for interlocutory review. The ALJ refused to certify the motion to the Commission. Specifically, the ALJ found that because he modified the subpoena requests as

originally drafted, interlocutory review was unnecessary. (Order No. 11 at 8.) This statement, however, ignores that fact that the ALJ's modifications did not appreciably reduce the burden on Atmel. Moreover, Order No. 11 did not adequately address Atmel's concerns with regard to confidentiality or cost.

Similarly, following the ALJ's issuance of Order No. 19, which he identified as an initial determination pursuant to Commission Rule 210.42(c), Atmel timely filed a petition for review with the Commission. Pursuant to Commission Rule 210.43(d)(2), the Commission was required to review Atmel's petition and STMicro's response thereto. 19 C.F.R. § 210.43(d)(2) ("The Commission shall decide whether to grant a petition for review, based upon the petition and response thereto . . . ."). Rather than review the parties' papers, however, the Commission issued a notice granting the ALJ's request for subpoena enforcement and classifying Order No. 19 as a request under Commission Rule 210.32(g). The notice does not indicate whether the Commission considered the parties' papers and Atmel must assume that the Commission failed to consider its petition for review. This choice to treat Order No. 19 as a request under 210.32(g) effectively prevented any meaningful review of the ALJ's orders and thereby deprived Atmel of due process. Furthermore, this Court has no record that it can rely on demonstrating that the Commission fully considered Atmel's position. Inasmuch as the Commission now seeks to enforce the subpoena in question without having reviewed the entire record, including the propriety of the ALJ's orders, it has acted unreasonably and exceeded its authority.

### C. The Document Requests As Modified By Order No. 11 Are Not Reasonably Relevant To The Commission's Investigation

An agency subpoena is enforceable if it "is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950). Although an agency need not present a focused

theory, it must show how the subpoena requests are reasonably relevant to the purposes of its investigation. *Gallo*, 637 F. Supp. at 1270. Where a relevance determination implicates substantive patent law, courts look to Federal Circuit authority for guidance. *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1212 (Fed. Cir. 1987). And in patent cases, the Federal Circuit has explained that "requested information is not relevant to the 'subject matter involved' in the pending action if the inquiry is based on the party's mere suspicion or speculation." *Micro Motion*, 894 F.2d at 1325 (citing cases). A party has no absolute right to pursue any and every alternative theory, no matter how complicated or tenuous. *See id.* at 1324 (rejecting discovery to non-party competitor claiming discovery would help prove lack of non-infringing alternatives for lost profits damages theory).

Furthermore, it is worth noting that the requirement that the Commission establish both relevance and need is independent of the issues of burden and protective orders. The existence of a protective order is not a substitute for establishing need or relevance. *Micro Motion*, 894 F.2d at 1325. Rather, a protective order "prevent[s] harm by limiting disclosure of *relevant* and *necessary* information." *Id.* (emphasis in original).

Here, the Commission contends that the subpoena requests, as modified by Order No. 11, are reasonably relevant to its investigation.[10] (*See* Commission Petition at 18-21.) This contention relies on two general arguments: (1) the documents are relevant to establishing the state of the art at the time the parent application for U.S. Patent No. 5,172,338 (the "'338 patent")

---

[10] As previously discussed, however, after Order No. 11 was issued STMicro narrowed its requests to pre-1989 documents related to three Atmel parts. (Order No. 19 at 1.) It continues to be Atmel's position that the subpoenas, as modified by Order Nos. 10 and 11, remain overbroad. Thus, if Order No. 11 were enforced as written, it would still be overbroad as requiring production of documents that STMicro has admitted are not relevant to the underlying investigation. In the event the Commission is only seeking to enforce the subpoena as narrowed by STMicro, it should have so stated in its papers. It has clearly not.

was filed, and (2) the documents are relevant to the validity of the '338 patent.  (Commission Petition at 19.)  As fully explained below, and in Atmel's previous submissions[11], both of the Commission's offered explanations are legally flawed and should be rejected.

### 1. The Requested Documents are not Relevant in Determining the State of the Art

The Commission's contention that Atmel's confidential documents are relevant to showing the "state of the art" prior to the filing of the patent-in-suit, is nothing more than a recasting of STMicro's faulty assertion that these same documents are relevant to establishing what a person of ordinary skill in the art would have known.[12]  This contention is incorrect as a matter of law.

The Federal Circuit has clearly articulated what types of evidence may be used for the purpose of claim construction and discerning the state of the art and what a person of ordinary skill in the art would have known.  *See, e.g., Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996); *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1355 (Fed. Cir. 2004).  To properly be considered, the source of extrinsic evidence must "rise to the level of unbiased, contemporaneous reflection of the common understanding of the technical terms in question as to be considered a reliable source."  *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1089 (Fed. Cir. 2003).  The Federal Circuit has stated:

> To ascertain the meaning of a claim term, "the court looks to those sources *available to the public* that show what a person of ordinary skill in the art would have understood disputed language to mean. Those sources include the words of the claims themselves, the remainder of the specification, the prosecution history, and

---

[11]  (*See* Ex. 3 at 9.)  STMicro did not challenge the correctness of these positions.

[12]  Tellingly, the Commission fails to provide any support for its erroneous contention that confidential documents can be used to establish the state of the art, which by its very nature must be freely available to the public.

> extrinsic evidence concerning relevant scientific principles, the
> meaning of technical terms, and **the state of the art**.

*NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1293 (Fed. Cir. 2005). The obvious

import of this and similar Federal Circuit cases is that evidence concerning the state of the art

must be publicly available to be relevant.

Unlike the types of information described by the Federal Circuit in *NTP* and *Vitronics*,

however, the documents requested by STMicro, and ordered to be produced by the ALJ, are not

publicly available or the type of objective resources commonly used for claim construction. The

documents comprise Atmel's confidential research and development of circuit designs, and the

Commission has not offered any evidence or argument that Atmel's circuit designs could or

would reflect the state of the art or common usage by persons of ordinary skill in the art during

the relevant time period. *See ACTV*, 346 F.3d at 1089 (refusing to rely on papers from an

industry working group because the papers were not designed to reflect common usage of

terms). In short, the Commission's argument does not justify an order finding any of Atmel's

confidential circuit design documents relevant to the underlying investigation.

### 2. Documents Created After April 13, 1989, Cannot Constitute Prior Art

To the extent the Commission contends that Atmel's documents might be relevant to

uncover purportedly invalidating prior art for purposes of the reexamination of the '338 patent,

this contention is in error.[13] 35 U.S.C. § 252 states:

> The surrender of the original patent shall take effect upon the issue
> of the reissued patent, and every reissued patent shall have the
> same effect and operation in law, on the trial of actions for causes

---

[13] The Commission has seemingly abandoned enforcing the production of Atmel documents created after April 1989. (Commission Petition at 19 ("Atmel products that were available *prior to 1990* have features that exemplify the state of the art prior to the filing of the patent-in-suit.") (emphasis added).)

> thereafter arising, as if the same had been originally granted in
> such amended form, but in so far as the claims of the original and
> reissued patents are substantially identical, such surrender shall not
> affect any action then pending nor abate any cause of action then
> existing, and the reissued patent, to the extent that its claims are
> substantially identical with the original patent, ***shall constitute a
> continuation thereof and have effect continuously from the date
> of the original patent.***"

(emphasis added). Because neither STMicro nor the Commission contend that the claims of the

'338 patent were <u>not</u> substantially identical after reexamination, the critical date for discerning

prior art remains April 13, 1989. Indeed, STMicro admitted as much by narrowing its requests

to pre-1989 schematics showing the circuitry and latch structures of the three Atmel products.

(Order No. 19 at 1.) As such, documents created after that date cannot be relevant as a matter of

law.[14] Further, information constituting prior art must be in the public realm. *See e.g., Lamb-*

*Weston, Inc. v. McCain Foods, Ltd.,* 78 F.3d 540, 548-549 (Fed. Cir. 1996) ("[S]ecret or

abandoned knowledge rior art . . . prior art in patent law is knowledge that is available to the

public."). For these reasons, the subpoena as modified by Order Nos. 10 and 11 should not be

enforced.

### D. The Document Requests As Modified By Order Nos. 10 and 11 Are Unreasonable And Unduly Burdensome

Assuming, *arguendo*, that the Court finds the subpoena requests to be reasonably relevant

to the Commission's investigation, "disclosure may be restricted where it would impose an

unreasonable or undue burden on the party from whom production is sought." *Gallo,* 637 F.

Supp. at 1271 (quoting *Dow Chemical Co. v. Allen,* 672 F.2d 1262, 1267 (7th Cir. 1982)).

Whether such requests are unreasonable or unduly burdensome is determined by balancing the

---

[14] The document requests as modified by Order No. 11, however, seek documents reflecting the development of Atmel's circuit designs prior to July 8, 1997. (Order No. 11 at 7-8.)

alleged hardship to the party from whom production is sought against the agency's need for the documents in question. *Id.* at 1272.

### 1. Hardship to Atmel

#### a) The Process of Identifying Documents Responsive to the Modified Requests is Unduly Burdensome Under the ALJ's Orders

Throughout this dispute Atmel has maintained that the subpoena in question even as modified is unreasonable and unduly burdensome. The Commission claims, however, that the ALJ recognized "the extreme over-breadth of the subpoena as originally drafted . . . [and] made necessary adjustments in the subpoena's requests to accommodate Atmel's concerns" in Order Nos. 10 and 11. (Commission Petition at 24.) As explained below, and as evinced by the ALJ's subsequent modification of the order, as written, Order No. 10 actually *expanded* the scope of the subpoena requests and increased the hardship to Atmel. (*See* Section II, *supra*.) Therefore, contrary to the Commission's claim that the ALJ's modification in Order No. 10 "provides support for the Commission's request for judicial enforcement," the overly broad requests listed in Order No. 10 support Atmel's claim of undue burden. (Commission Petition at 24-25 (quoting *SEC v. Arthur Young and Co.*, 584 F.2d 1018, 1028 (D.C. Cir. 1978) for the proposition that the burden is lessened when the district court takes steps to reduce it.).)[15]

#### (1) The Subpoena Requests as Modified by Order No. 10 Required Atmel to Undertake a Costly and Time Consuming Two-Step Inspection

First, pursuant to Order No. 10 Atmel was required to produce documents responsive to Request Nos. 17-19, which relate to "[a]ll documents sufficient to show Atmel circuit designs conceived or developed prior to July 8, 1997." (Order No. 10 at 8.) These requests encompass

---

[15] The reasoning in *Arthur Young* is not applicable here because Order No. 10 did not reduce any burden on Atmel.

the entire period from Atmel's founding in 1984, to July 8, 1997 – approximately thirteen (13) years. (*See* Ex. 4 ¶ 5.) During the periods the ALJ deemed relevant, *i.e.*, "the late 1980's" and "prior to July 8, 1997," all of Atmel's business related to circuit designs, including products other than non-volatile memory designs; hence, under this modification, virtually 100 percent of Atmel's engineering documents would have had to have been inspected for responsive documents. (*Id.* ¶ 3; Ex. 8 ¶ 5.) Federal courts have denied production of documents based on the significant burden imposed by similarly worded requests. *See Heidelber Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41-42 (1st Cir. 2003) (affirming district court's order quashing subpoena as unduly broad and overly burdensome where "subpoena encompasses a decade's worth of materials and asks 'for *all* documents received, *reviewed* or generated by Heidelberg . . . relating to . . . any . . . type of business affiliation with Goss.'").

Moreover, the burden imposed by the expansive scope of Order No. 10 is compounded by the fact that Atmel generally maintains an informal document retention policy of six to eight years. (*Id.* ¶ 6.) Documents are sent to off-site storage routinely, depending on several factors including, but not limited to, need and volume, as well as when employees leave the company. (*Id.*) Further, the cataloging of many of these documents, as they are shipped off-site, is varied and Atmel has no ability to confirm the existence or non-existence of specific documents short of a manual search of each and every storage box. (*Id.*) Even further, many engineers or other employees may keep their own personal archive of documents depending on the projects they have, or will be working on for Atmel. (*Id.*) Thus, to comply with Order No. 10, Atmel would have had to inspect each and every box kept in off-site storage that could be identified as containing documents within the relevant time periods, as well as each and every engineer's personal archive for responsive documents. (*Id.*) Atmel informed the ALJ in its motion for

reconsideration of Order No. 10 that under these circumstances, it would take Atmel several weeks to months to complete its search for documents falling within the relevant time period, even if the requests were limited to non-volatile memory designs. (*Id.* ¶ 7.) Atmel also stated that such a search would cost Atmel at least hundreds of personnel hours and at least tens of thousands of dollars. (*Id.*) This evidence was unrebutted.

Second, Order No. 10 required Atmel to produce any existing documents sufficient to: (1) show whether the inverters operate as a one-way or two-way latch, and (2) identify the type and size of each transistor. (*See* Order No. 10 at 8.) In this regard, to determine whether Atmel's documents were responsive, Atmel would have had to dedicate several engineers, technical personnel, and even outside consultants to evaluate each and every circuit design. (*Id.* ¶ 8.) Atmel explained that this second tier analysis would easily take several hundreds of additional personnel and consultant hours, and tens of thousands more dollars. (*Id.*) Notwithstanding these obstacles to production, the ALJ ordered complete compliance with his order within eight (8) business days of issuing his order. (Order No. 10 at 8.)

These facts clearly demonstrate that the subpoena requests, as modified by Order No. 10, were unreasonable and unduly burdensome.

### (2) The ALJ's Modifications of the Subpoena Requests in Order No. 11 were Inadequate

The ALJ's modifications in Order No. 11, did not, however, appreciably diminish the burden to Atmel. Although the ALJ limited the requests to documents related to six Atmel and SEEQ parts, the purportedly relevant timeframe for these documents remains expansive.[16]

---

[16] The Commission claims that "[t]he subpoena requests are not facially overbroad, but, rather, are limited in both time and scope." (Commission Petition at 22.) This statement ignores the fact that the Commission is seeking to enforce the subpoena requests as modified by Order Nos. 10 and 11. (Commission Proposed Order at 2.) Pursuant to Order No. 11, Atmel is compelled to produce documents created during a thirteen (13) year span of time. (Order No. 11

(Order No. 11 at 7-8.)  Moreover, as explained in Atmel's petition for review, a search for documents responsive to Order No. 11 would still entail the same expenditure of personnel hours and money.  (Ex. 13 at 4, 8-9.)  Atmel would have to conduct both a relevance and privilege review.  Further, contrary to the Commission's claim that "compliance with the subpoena does not threaten Atmel's normal operation," the sworn declaration of Atmel's Vice President of Global Affairs for Intellectual Property and Litigation expressly states that "[o]ur resources are already taxed and we would not be able to conduct this search without hiring additional personnel."  (Ex. 8 ¶ 10.)  Nonetheless, the ALJ unreasonably ordered production of documents pursuant to Order No. 11 within eleven (11) business days of its issuance.  (Order No. 11 at 8.)  Of course, even if the ALJ had given more time to comply, the scope of the requests were still unreasonable.

> **b)  Order Nos. 10 and 11 Place an Unreasonable
> Burden on a Disinterested Non-Party**
>
> > **(1)  The Court Should Consider Atmel's Status
> > as a Disinterested Non-Party to the
> > Underlying Investigation**

The Commission states that the fact that Atmel is a non-party in the Commission investigation is not a defense to compliance with the subpoena.  (Commission Petition at 26.)  This statement ignores, however, Atmel's good faith efforts to comply with the subpoena[17] and

---

at 7-8.)  This fact directly refutes the Commission's claim that the requests are somehow limited in time.

[17]  The Commission states that "Atmel essentially refused to comply with the Commission subpoena and the ALJ's orders."  (Commission Petition at 17.)  The facts, however, tell a different story.  Moreover, the cases cited by the Commission regarding refusal to comply with an administrative subpoena all include a finding of willful and/or bad faith conduct on the part of the party from whom discovery was sought.  (*See* Commission Petition at 17-18 and cases cited therein.)  The Commission has not alleged, much less proven, that Atmel acted willfully or in bad faith.  As such, Atmel's diligent and good faith attempts to reach a reasonable solution to assuage its concerns and lessen the burden of production render these cases inapposite.

the federal courts' established practice of considering non-party status as a factor in determining burden. *See, e.g., Katz v. Batavia Marine & Sporting Supplies*, 984 F.2d 422, 424 (Fed. Cir. 1993) ("The fact of nonparty status may be considered by the court in weighing the burdens imposed in the circumstances."); *Am. Standard, Inc. v. Pfizer, Inc.*, 828 F.2d 734, 738 (Fed. Cir. 1987) (affirming district court's restriction of discovery where nonparty status "weigh[ed] against disclosure."); *Solarex Corp. v. Arco Solar, Inc.*, 121 F.R.D. 163, 179 (E.D.N.Y. 1988) (non-party status a significant factor in determining whether discovery is unduly burdensome); *Certain Optical Waveguide Fibers*, Inv. No. 337-TA-189, Request for Judicial Enforcement of Non-Party Subpoena, GC-84-179 (Oct. 25, 1984) (citing *Hecht v. Pro-Football, Inc.*, 46 F.R.D. 605 (D.D.C. 1969) and *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225 (9th Cir. 1975)). *See also Certain Set-Top Boxes and Components Thereof*, Inv. No. 337-TA-454, Order No. 16 at 1-2 (July 2, 2001) (citing *Katz*, 984 F.2d at 424). In fact, the First Circuit has stated:

> Although discovery is by definition invasive, parties to a lawsuit must accept its travails as a natural concomitant of modern civil litigation. Non-parties have a different set of expectations. *Accordingly, concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs.*

*Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) (emphasis added).

### (2) STMicro Failed to Make a Reasonable Inquiry and Exhaust Other Sources Before Burdening Atmel with the Subpoena Requests at Issue

Atmel's non-party status has elevated importance when viewed in conjunction with STMicro's duty to search other sources before subpoenaing the requested information from Atmel. This duty includes two separate, yet complimentary requirements: (1) performing a reasonable inquiry that the request is warranted, and (2) exhausting other sources before requesting information from a non-party. *See Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d

1318, 1323 (Fed. Cir. 1990; *Haworth, Inc., v. Herman Miller, Inc.,* 998 F.2d 975 (Fed. Cir. 1993). As more fully explained in its motion to quash (Ex. 2) and motion for reconsideration of Order No. 10 (Ex. 3), the facts show that STMicro failed to satisfy either requirement.

First, pursuant to Federal Rule of Civil Procedure 26(g), an "attorney seeking discovery must *certify* that he has made a 'reasonable inquiry' that the request is warranted." *Micro Motion,* 894 F.2d at 323; Fed. R. Civ. P. 26(g).[18] The inquiry must be sufficient to create an objective belief that the discovery requests are not unreasonable, unduly burdensome or expensive, given the needs of the case. *See* Fed. R. Civ. P. 26(g); 19 C.F.R. § 210.27(d)(2)(iii). This inquiry is greater than that required by Rule 11, because a discovery request usually pertains to more specific subject matter than that covered by Rule 11. *Micro Motion,* 894 F.2d at 1323 (citing *Apex Oil Co. v. Belcher Co.,* 855 F.2d 1009, 1015 (2d Cir. 1988).

Here, STMicro never provided any evidence tending to show that it made a reasonable inquiry prior to serving the subpoena on Atmel. This fact weighs heavily in favor of Atmel's position that the subpoena requests are unduly burdensome. *See Micro Motion,* 894 F.2d at 1327 (reversing district court's denial of non-party motion to quash based in part on requesting party's lack of evidence that it made a reasonable inquiry). Additionally, STMicro's acknowledgment that the scope of its initial requests were far broader than needed for the purposes of the underlying investigation evinces a clear failure to undertake the required inquiry. (*See, e.g.,* Ex. 9.)

Second, STMicro's refusal to search other sources before requesting documents and information from Atmel constituted an admitted violation of well-established legal authority in Commission investigations. *See, e.g. Certain Optical Waveguide Fibers*, Inv. No. 337-TA-189, Request for Judicial Enforcement of Non-Party Subpoena, GC-84-179 (Oct. 25, 1984); *see also*

---

[18] Commission Rule 210.27(d)(2) tracks nearly verbatim the language of Rule 26(g).

*Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993) (requiring party to seek discovery from party opponent before burdening non-party).  Specifically, STMicro failed to contact the numerous commercial engineering laboratories that specialize in technical analysis of semiconductor devices to determine whether any relevant Atmel memory devices had already been reverse engineered.  Nor did STMicro contact commercial entities, such as Chipworks, TAEUS or I.C.E., which maintain historic product information on numerous memory devices and/or have the ability to reverse engineer products, including those sold by Atmel.[19]  In fact, the only public source STMicro apparently consulted was Atmel's website, and that was performed only *after* Atmel moved to quash the subpoena.  STMicro's single purported justification for seeking documents from Atmel before exhausting other sources was that these sources were too expensive.  This response is clearly insufficient to justify shifting the entire burden to Atmel.  As the court in *Premium* stated:

> Compliance would have required extensive sifting and analysis by Walker-Scott employees . . . . The district court could reasonably have found, without abusing its discretion, that Premium Service's need for these documents was not sufficient to outweigh the burden and invasion of corporate privacy which would have resulted to Scott and Walker-Scott, *especially since they were not parties to the suit.*

511 F.2d at 229.  The fact that Atmel was forced to undertake this "sifting and analysis" *before* STMicro investigated, much less exhausted, other sources of information supports the conclusion that the ALJ's orders are unreasonable and overly burdensome.

### (3) The Fact that STMicro is its Competitor Creates Additional Burden for Atmel

As explained in Atmel's motion to quash, the United States memory device industry is

---

[19]  That STMicro was aware of these sources is not in dispute.  In its pre-hearing brief in the underlying investigation, STMicro relied on reports from TAEUS and Chipworks to support its invalidity contentions with respect to other products.

small, limited to a relatively few number of key companies, and highly competitive. (*See* Ex. 2 at 7.) STMicro is one of Atmel's competitors. Federal courts have concluded that the prospect of producing highly confidential information to one's competition should be considered as an additional burden upon the party from whom documents are requested. *See, e.g., Am. Standard*, 828 F.2d at 741 ("Courts have presumed that disclosure to a competitor is more harmful than disclosure to a noncompetitor.); *Am. Metal Prods. Co. v. Gutter Topper, Ltd.*, No. M 8-85, 1997 WL 666291 at *1 (Oct. 24, 1997) (stating that the Federal Circuit "strongly suggested that courts should be reluctant to grant discovery of competitive information to plaintiffs as a matter of course in patent cases, lest the practice lead to abuse." Citing *Micro Motion*, 894 F.2d at 1324-25). Under this reasoning, the fact that STMicro is one of Atmel's competitors supports Atmel's claim that the requests are unduly burdensome.

### c) The ALJ's Refusal to Accept Atmel's Proposed Safeguards with Respect to the Confidential and Privileged Nature of its Documents was Unreasonable and Places an Undue Burden on Atmel

As detailed above, Atmel and STMicro had reached stipulations on three out of five of Atmel's proposed safeguards regarding the confidential and privileged nature of its documents when the ALJ requested that the subpoenas be enforced. (*See* Section II, *supra*.) Further, the ALJ's refusal to consider Atmel's request for an amendment to the protective order unfairly prejudiced Atmel's ability to adequately protect its information.[20]

---

[20] The Commission and the ALJ contend that Atmel's requests to amend the protective order were untimely because they came after the deadline for production of documents. (Commission Petition at 17; Order No. 19 at 4-5.) This position is unreasonable in light of the circumstances in this dispute. First, Commission Rule 210.34, which governs protective orders, has no time limitation. *See* 19 C.F.R. § 210.34. Second, even after Atmel explained that it would take weeks or months to complete its search for documents, the ALJ ordered production within eleven (11) business days of issuing his order. Finally, in Order No. 11, the ALJ criticized Atmel for undertaking expensive motions practice "[r]ather than engage in [ ] reasonable means of identifying just what responsive evidence might exist." (Order No. 11 at 4.)

(1)    **The Confidential Nature of Atmel's Documents
Should be Considered when Balancing the
Hardship to Atmel with the Commission's
Purported Need for the Documents**

The Commission contends that the need to maintain confidentiality does not justify refusing to comply with a subpoena. (Commission Petition at 13.) This contention is at odds with the general principle that "[c]onfidential commercial information warrants special protection. . . ." *Micro Motion*, 894 F.2d at 1323. Moreover, the legal authority cited by the Commission in purported support for this contention, however, is readily distinguishable from the instant situation. For example, none of the Equal Employment Opportunity Commission ("EEOC") cases dealt with the disclosure of non-party confidential business information. *See E.E.O.C. v. C & P Tel. Co.*, 813 F. Supp. 874 (D.D.C. 1993) (seeking to prevent disclosure of an employment test); *Univ. of Penn. v. E.E.O.C.*, 493 U.S. 182 (1990) (seeking to prevent disclosure of employment file based on a privilege of peer review materials); *E.E.O.C. v. Associated Dry Goods Corp.*, 449 U.S. 590 (1981) (seeking to prevent disclosure of employment records). Notwithstanding this key factual distinction, the Commission relies on *C & P Telephone* for the general principle that "[t]he need for confidentiality is not a valid basis to refuse to comply with a subpoena." (Commission Petition at 13.) But, the Commission omits the two sentences immediately following the one cited in its brief: "A court may, however, impose various conditions on the disclosure of confidential information to an administrative agency. The court finds that it is appropriate in this case to condition enforcement of the subpoena on the signing of a confidentiality agreement." *C & P Tel.*, 813 F. Supp. at 876. This is precisely what Atmel is requesting here. (*See* Section III.E, *infra*.)

The Commission's reliance on *Exxon Corp. v. F.T.C.*, 588 F.2d 895 (3d Cir. 1978), *F.T.C. v. Standard Oil Co.*, Misc. No. 79-0116, 1979 WL 1663 (D.D.C. July 27, 1979) and

*F.T.C. v. Dresser Indus., Inc.*, Misc. No. 77-44, 1977 WL 1394 (D.D.C. April 26, 1977), is similarly misplaced. (*See* Commission Petition at 13-16.) Unlike 19 U.S.C. § 1337[21], the statutes under which the FTC conducts its investigations expressly provide for safeguards in addition to any protective orders that may be issued in those investigations. *See Dresser*, 1977 WL 1394 at *5. In fact, these statutory safeguards were of primary importance to this Court in enforcing the FTC subpoena in the *Standard Oil* case. *See Standard Oil*, 1979 WL 1663 at *4. Specifically, the Court found that 15 U.S.C. § 46(f), which bars the FTC from disclosing any confidential information obtained during an investigation except to law enforcement agencies; 15 U.S.C. § 50, which makes violating the previous section a criminal misdemeanor; and 16 C.F.R. § 4.10(a)(2), which prevents disclosure of such information under the Freedom of Information Act, "constitute substantial and significant safeguards." *Id.* Because there are no similar statutory protections in Section 337 investigations, the Commission's claim that these cases provide "well-established precedent" for the circumstances in this dispute, is in error.

### (a) The Protective Order Issued in the Underlying Investigation does not Adequately Protect Atmel's Confidential Information Used at the Commission

Contrary to the Commission's assertion, the protective order in the underlying investigation does not sufficiently protect the confidential nature of Atmel's documents, or address Atmel's proposed handling of any privileged materials. (Commission Petition at 16.) For this reason, Atmel proposed several safeguards to STMicro for consideration. (*See* Ex. 7.) STMicro agreed to all but two of these proposals. (*See* Ex. 9.) All of these proposed safeguards

---

[21] 19 U.S.C. § 1337(n) governs the disclosure of confidential information in Section 337 investigations.

are reasonable and should have been considered by the ALJ and added to the existing protective order.[22]

First, as Atmel indicated in its motion for reconsideration and subsequent correspondence with STMicro, Atmel has legitimate concerns about the existing protective order. As a non-party, Atmel will not be served with future motions, briefs, expert reports and other submissions by the parties. Thus, Atmel will have no control over whether its information becomes public, even if inadvertently, through testimony at future hearings or in motions or briefs. Courts have held that protective orders are insufficient to protect the interests of non-parties who have no means to ensure the confidential treatment of any discovery. *See Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1325 (Fed. Cir. 1990). In *Micro Motion*, the Federal Circuit stated:

> It would be divorced from reality to believe that either party here would serve as the champion of its competitor [a third party] either to maintain the confidentiality designation or to limit public disclosure. . . [the third party] would, in fact, lose all control of the situation since disclosure of its information depends on the action by a court before whom it has no standing.

*Id.*

Additionally, even under the existing protective order, which provides for information to be handled solely by outside counsel, Atmel will not have the ability to track its confidential information because, among other things, it will not be notified of new experts and consultants or have control over its information in the parallel district court action. Consistent with its practices for its own litigation matters, Atmel needs to know who has access to its confidential information, including any of the parties' consultants or experts. Atmel also needs assurance about the continued

---

[22] The protective order should be amended to include all of the five proposed safeguards in order to bind all parties to the underlying investigation. Although STMicro requested that the Staff and SanDisk agree to some of the proposed safeguards, no agreement was obtained from those parties. (*See* Ex. 14.) Atmel needs all the parties to be bound, otherwise, it will not be able to track its confidential information fully.

confidential treatment of its materials given the fact that STMicro is a competitor and is a party to the Commission and various district court actions. None of these safeguards are contained in the protective order in the underlying investigation. This inability to follow its confidential information places an undue burden on Atmel.

### (b) The Protective Order Issued in the Underlying Investigation does not Adequately Protect Atmel's Confidential Information Used in District Court Litigation

In Order No. 19, the ALJ stated that, "the second of five stipulations Atmel seeks to add to the protective order through its response to ST's motion to enforce, includes the requirement that any Atmel confidential business information is being used solely for this investigation, but cannot be used 'for the corresponding district court action between the parties.'" (Order No. 19 at 3.) The ALJ found this proposed safeguard unnecessary because, "[t]his 'additional' protection is already provided for in the existing protective order provision that provides '[i]nformation obtained pursuant to the Commission's protective order, however, may be produced to the district court under the district court protective order <u>only with the consent of the suppliers of that information</u>.'" (Order No. 19 at 3 (citing *In re Int'l Trade Comm'n*, 44 Fed. Appx. 480, 482 (Fed. Cir. 2002)[23].) There is, however, a fundamental problem with the ALJ's reasoning in this regard. Pursuant to 28 U.S.C. § 1659(b), "the record of the proceeding before the International Trade Commission *shall* be transmitted to the district court and *shall* be admissible in the civil action, subject to such protective order as the *district court* determines necessary." (emphasis added). Therefore, it is the district court's protective order that governs the use of information obtained during a Commission investigation and subsequently transmitted to the district court. *See Certain SDRAMS, DRAMS,*

---

[23] In that case, the district court "crafted a decision 'to accommodate to the greatest extent possible the concerns of the ITC about protecting the confidentiality of third-party business information contained in the Record." *Id.*

*ASICS, RAM and Logic Chips, Microprocessors, Microcontrollers, Processes for Manufacturing Same*, Inv. No. 337-TA-404, Order No. 6 (Jan. 6, 1998). The ALJ in *SDRAMS* stated:

> Particularly where the supplier is a third party who is involved in neither the Commission investigation nor the district court case, it is important that the supplier be made aware that treatment of confidential information would be governed by the district court's protective order and not that of the Commission.

*Id.*

The reasoning in *Micro Motion* and *SDRAMS* is particularly relevant to Atmel's current situation. Atmel is aware that SanDisk and STMicro have parallel proceedings on this and related patents in the United States District Court for the Northern District of California ("California litigation") and in the United States District Court for the Eastern District of Texas ("Texas litigation"). However, for example, the protective order issued in the Texas litigation contains provisions that could potentially impact Atmel's ability to protect the confidential nature of its documents. Specifically, paragraphs 6 and 7 of that protective order permit in-house counsel access to documents marked "CONFIDENTIAL – OUTSIDE COUNSEL ONLY." (District Court Protective Order ¶¶ 6-7, attached as Exhibit 16.) Thus, the protections in the Commission protective order are elusive because the district court protective order would govern the use of Atmel's information.[24] This issue, among other things, is precisely the scenario Atmel envisioned when it proposed the five additional safeguards and requested an amendment to the protective order. (*See* Ex. 7; Ex. 3 at 19-20.)

The Commission's stance with regard to Atmel's reasonable attempts to protect its confidential information is surprising as the Commission relies on the reputation of its protective

---

[24]    Indeed, Atmel has now received a subpoena for documents on two patents, one of which is related to the patent in the Commission investigation. Thus, Atmel's fears about losing control if its documents are real. (*See* STMicroelectronics, Inc.'s Notice of Deposition *Duces Tecum* to Atmel Corporation, attached hereto as Exhibit 15.)

orders to obtain the information it needs to conduct Section 337 investigations. *See Certain Rotary Wheel Printers*, Inv. No. 337-TA-145, Interlocutory Appeal (Sept. 2, 1983) ("Appropriate protection of confidential information is crucial to the Commission's ability to carry out its statutory responsibilities in an effective and meaningful manner."). It is certainly Commission policy to provide non-parties with the greatest possible protection for their confidential business information. The Commission's position in its petition, however, directly conflicts with this longstanding policy. That being the case, the additional protection requested by Atmel to safeguard the confidentiality of its internal documents and information clearly serves to further increase non-parties' confidence in the protection provided by Commission protective orders. At the same time, there is no down side for the Commission or the parties in the investigation by including this minor modification.

### (2) The ALJ's Refusal to Amend the Protective Order to Include Atmel's Privilege Safeguard was Unreasonable

Atmel proposed that STMicro must specifically agree that Atmel's production of documents, particularly the "SEEQ documents," for inspection will not constitute a waiver of attorney-client privilege or work product immunity and that STMicro will not use any privileged material those documents may contain. (*See* Ex. 7.) Under Atmel's proposal, STMicro would be immediately permitted to inspect the documents and select those it deemed responsive. Atmel would then review this presumably much smaller subset of documents for privilege before copying and final production. The purpose of this reasonable procedure was to allow STMicro prompt access to the documents, while at the same time, minimizing the burden on and expense

to Atmel.[25] Atmel's proposed safeguard merely protects it from inadvertently waiving privilege during STMicro's preliminary inspection.

The ALJ, however, dismissed this proposal stating that he "will decide the issue of waiver after hearing from the relevant parties and evaluating the facts and circumstances underlying the waiver on a case-by-case basis." (Order No. 19 at 4.) Clearly, this is insufficient to protect Atmel from possible waiver of privilege.[26] In addition, the ALJ and Commission's claim that Atmel's privilege proposal was untimely and that "no party to the investigation had the opportunity to respond to Atmel's inadvertent waiver provision," is belied by the fact that STMicro forwarded Atmel's proposed safeguards to the Commission Investigative attorney and counsel for SanDisk on June 9, 2005. (*See* Ex. 14.)

That Atmel's proposed privilege safeguard is reasonable is supported by the protective order in place in the Texas litigation. For example, paragraph 16 of that protective order expressly states that "[m]aking things available for inspection shall not, by itself, constitute a waiver by the providing party. . . ." (Ex. 16 ¶ 16.) In addition, paragraph 3 states that a party need not mark its documents prior to initial inspection. (*See id.* ¶ 3.) Rather, the producing party shall mark its documents "upon selection of specified documents for copying by the inspecting

---

[25] Atmel would be forced to hire a team of attorneys to review 50 boxes of largely unresponsive documents.

[26] Atmel has been in a similar situation regarding waiver of privilege. *See Winbond Elecs., Inc. v. United States Int'l Trade Comm'n*, 262 F.3d 1363, 1375-76 (Fed. Cir. 2001). In that case, Atmel appealed the ALJ and Commission's determination that a subject matter waiver occurred concerning communications between Atmel's counsel and one of the patent inventors. Final resolution of the waiver issue took more than two years. *See id.* Here, Atmel's reasonable offer to undertake a privilege review only of those documents selected by STMicro, would serve the timeliness of production, prevent Atmel from unnecessary costs and avoid the possibility of future litigation of the issue.

party." (*Id.*)  This procedure is identical to the one proposed by Atmel and arbitrarily rejected by the ALJ and Commission.

### 2. The Commission has not Shown a Need for the Documents Requested in Order Nos. 10 and 11

The Commission's need for the documents in question must be weighed against the previously discussed burden on Atmel to produce documents responsive to the subpoena requests as modified by Order Nos. 10 and 11.  *See Gallo*, 637 F. Supp. at 1272.  Where, as here, the party challenging the subpoena has made a *prima facie* showing of burden, the requesting party must establish a need for the breadth of the information sought.  *See Katz*, 984 F.2d at 424-25; *see also Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 532 (D. Del. 2002) (granting motion to quash where non-party's "representations regarding the time, effort, employee involvement and resulting cost" were not rebutted by evidence of requesting party's need for documents).  In its petition, the Commission fails to explain its need for the documents in question other than by making the conclusory and unsupported statement that "[t]he information requested to be produced is directly relevant to the purpose of the Commission's investigation, is not unreasonably cumulative or duplicative of information ST already has, and cannot be obtained from any source other than Atmel."  (Commission Petition at 22.)  This statement cannot be reconciled with Federal Circuit authority and the Commission's own recitation of the factual background of this dispute.  Specifically, the Commission expressly notes that:

> ST had submitted "that it narrowed its requests to ***pre-1989 schematics*** showing the programming circuitry and latch structure of ***three Atmel products***, each of which were on-sale during the relevant time frame."  Order No. 19 at 1.

(Commission Petition at 23 n.14.)  The Commission's acknowledgement that STMicro recognized that *only* pre-1989 documents related to three Atmel parts are relevant to the

34

underlying investigation, demonstrates that the subpoena requests as modified by Order Nos. 10 and 11 are overbroad and that the Commission has no *need* for the remainder of documents requested therein. Moreover, as previously discussed, most, if not all, of Atmel's pre-1989 documents are not relevant to any issue in the underlying investigation. (*See* Section III.C.1, *supra.*) For these reasons, the Commission has not rebutted Atmel's *prima facie* showing and has not established that its need for the documents in question outweighs the hardship on Atmel to produce them.

### E.  The District Court Has The Authority To Draft An Order That Takes Atmel's Proposed Safeguards Into Account

Should the Court determine that the subpoena should be enforced, Atmel requests that the Court draft an order that incorporates Atmel's five proposed safeguards into account. STMicro has already stipulated to three of Atmel's five proposed safeguards and has offered to narrow the scope of the subpoena requests to pre-1989 documents related to three Atmel parts. (*See* Order No. 19 at 1, 4; Ex. 9.) The subpoena requests that the Commission is seeking to enforce, however, do not incorporate any of these stipulations, and Atmel has not reached an agreement on these safeguards with the Commission Investigative attorney or SanDisk. (*See* Order No. 10 at 8-9; Order No. 11 at 7-8.) Therefore, Atmel requests that any enforcement order condition any production on all five of Atmel's proposed safeguards. (*See* Ex. 7.) Atmel has shown, and the Commission has not refuted, the reasonableness and utility of these additional protective measures.

The Commission maintains that Atmel's request is in direct conflict with well-established precedent. (*See* Commission Petition at 15.) Specifically, the Commission points to the Third Circuit's statement in *Exxon Corp. v. F.T.C.* at 903 , that "[a] court cannot impose its own set of protections unless the agency abused its discretion in determining what protection was

necessary." (Commission Petition at 14 n.6 (quoting *Exxon Corp.*, 588 F.2d at 903).) As an initial matter, the Commission's position is only relevant to Atmel's proposed amendments to the existing protective order and does not affect Atmel's request that the Court fashion a separate order, which includes each of the five safeguards.

Further, "a district court should not be reluctant to modify, limit, or deny enforcement of administrative subpoenas . . . ." *Gallo*, 637 F. Supp. at 1272. *See also SEC v. Brigadoon Scotch Distrib. Co.*, 480 F.2d 1047, 1056 (2d Cir. 1973) ("Likewise, if it could be demonstrated that compliance with an agency subpoena would be *unnecessarily* burdensome, some limitation of the materials required would be warranted."). Atmel has aptly shown that the subpoena requests, as modified by Order Nos. 10 and 11, are unreasonable, unduly burdensome and request documents not relevant to the underlying investigation. Therefore, the ALJ and Commission's actions constitute an abuse of discretion and the Court, if it chooses to enforce the subpoena, should modify and limit it accordingly.

## IV.  **CONCLUSION**

Atmel has demonstrated that under its current construction, the subpoena in question should not be enforced.  In the alternative, the Court should draft an order conditioning production of documents on the five proposed safeguards listed in Atmel's June 2, 2005, letter and STMicro's admission that the only documents relevant to the underlying investigation are those that were created before 1989 and specifically relate to three Atmel products.

Dated:  September 30, 2005                    Respectfully submitted,

Louis S. Mastriani
Barbara A. Murphy
S. Alex Lasher
ADDUCI, MASTRIANI & SCHAUMBERG, L.L.P.
1200 Seventeenth Street, N.W.
Washington, DC  20036
Telephone:  (202) 467-6300

*Counsel for ATMEL CORPORATION*

AT701905.DOC

37

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PETITION FOR AN EXPEDITED ORDER TO ENFORCE SUBPOENA ISSUED BY THE UNITED STATES INTERNATIONAL TRADE COMMISSION (PUBLIC)** was served, as indicated on the parties listed below, this 30th day of September 2005:

**Counsel for Petitioner U.S. International Trade Commission**

James M. Lyons, Esq., General Counsel
Andrea C. Casson, Esq., Assistant General Counsel
Rhonda Hughes, Esq., Attorney Advisor
Michael Liberman, Esq., Attorney Advisor
U.S. International Trade Commission
500 E Street, S.W.
Washington, DC 20436
(VIA FIRST CLASS MAIL)

**Counsel for STMicroelectronics N.V. and STMicroelectronics, Inc.:**

James L. Quarles III, Esq.
William G. McElwain, Esq.
Michael D. Esch, Esq.
WILMER CUTLER PICKERING HALE AND
  DORR LLP
1455 Pennsylvania Avenue, N.W.
Washington, DC 20004
(VIA FIRST CLASS MAIL)

William F. Lee, Esq.
WILMER CUTLER PICKERING HALE AND
  DORR LLP
60 State Street
Boston, Massachusetts 02109
(VIA FIRST CLASS MAIL)

ADDUCI, MASTRIANI & SCHAUMBERG, L.L.P.
1200 Seventeenth Street, N.W., Fifth Floor
Washington, DC 20036

AT100005-pub