UNITED STATES INTERNATIONAL TRADE COMMISSION
Washington, D.C.
Before the Honorable Paul J. Luckern

In the Matter of

CERTAIN NAND FLASH MEMORY CIRCUITS
AND PRODUCTS CONTAINING SAME

Investigation No. 337-TA-526

**MEMORANDUM OF THIRD PARTY ATMEL CORPORATION IN SUPPORT
OF ITS MOTION TO QUASH AND/OR LIMIT SUBPOENA AD TESTIFICANDUM
AND SUBPOENA DUCES TECUM AND AD TESTIFICANDUM AND
TO SHIFT COSTS INCURRED IN RESPONDING**

Pursuant to Commission Rules of Practice and Procedure 210.15 and 210.32(d) (19 C.F.R. §§ 210.15 and 210.32(d)), third party Atmel Corporation ("Atmel") submits this Memorandum in Support of its Motion to Quash and/or Limit the subpoena *ad testificandum* and subpoena *duces tecum* and *ad testificandum* issued by the Administrative Law Judge ("ALJ") on March 24, 2005.

## I. INTRODUCTION

Respondents STMicroelectronics N.V. and STMicroelectronics, Inc. (collectively "STMicro") submitted Applications for Issuance of a Subpoena *Ad Testificandum* and a Subpoena *Duces Tecum* and *Ad Testificandum* seeking a broad range of documents and testimonial discovery from Atmel. Copies of the subpoenas are attached as Exhibits A and B, respectively. Both subpoenas repeat identical document requests, and will be referred to collectively as if they were a single subpoena. The subpoena is overly broad, unduly burdensome and seeks production of a vast number of documents wholly irrelevant to this investigation but sensitive to Atmel. Specifically, categories 1-12 of the subpoena request all documents related to various types of Atmel Memory designs conceived or developed before



EXHIBIT 2

April 11, 1990 and July 8, 1997, and any Memory design commercialized after April 13, 1988. *See* Ex. A at 3-5. In addition, categories 13-15 seek documents relating to any license agreement with SanDisk that covers the '338 patent. *See id.* at 6. These requests cover almost seventeen (17) years of Atmel's activities related to the research and development of integrated circuit memory device designs, the vast majority of which are confidential business information and, in many instances, trade secrets. Moreover, categories 13-15 seek documents that easily can be obtained from SanDisk. As such, it appears that the subpoena is primarily a fishing expedition aimed at obtaining possible prior art, which STMicro can clearly obtain from publicly available sources.[1] Further, it appears to be an effort to shift STMicro's burden to Atmel to locate prior art without any attempt to minimize the burden or cost to Atmel. It is improper for STMicro to attempt to shift the burden of locating prior art to a third party.

Atmel itself had discussions with STMicro's counsel about extending the time for answering or quashing the subpoena and about limiting the subpoena. Atmel enlisted counsel to assist it in this process. Atmel was unable to obtain any extension, unless it were willing to forego its right to quash or object, without having to resort to the ALJ. Although STMicro has provided additional guidance about the subpoena, this has not allowed Atmel to limit its search in any meaningful way. Accordingly, the subpoena to Atmel should be quashed. Moreover, for the same reasons that Atmel should not be required to produce documents responsive to these categories, it should not be required to produce someone to testify on these topics.

---

[1] Information constituting prior art must be available in the public realm. *See, e.g., Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 78 F.3d 540, 548-49 (Fed. Cir. 1996) ("[S]ecret or abandoned knowledge is not prior art ... prior art in patent law is knowledge that is available to the public."). Therefore, Atmel's confidential information cannot be prior art and, thus, relevant to this investigation.

2

To the extent the subpoena is not quashed outright, it should be limited. First, STMicro should identify no more than a handful of particular products (by product number) that it believes are likely to be relevant after a search of public sources, including information about Atmel products. Second, STMicro should pay for the cost of Atmel's search and response. Third, for product information, Atmel's response should be limited to information that was public at the time, so that the information constitutes prior art. Finally, for any information that is not public that may be relevant, such as proof of a sale, Atmel needs certain information about consultants and experts going forward.

## II.     ARGUMENTS AND AUTHORITIES

### A.     The Subpoena Is Unduly Burdensome And Seeks Documents And Testimony On Subject Matters That Are Irrelevant

In a Section 337 investigation, the test for determining whether a subpoena should be quashed balances:

   1.   the relevance of the discovery sought;

   2.   the need of the requesting party; and

   3.   the potential hardship to the party responding to the subpoena.

*Certain Set-Top Boxes and Components Thereof*, Inv. No. 337-TA-454, Order No. 13 at 1-2 (June 25, 2001) (citing *Certain EPROM, EEPROM, Flash Memory, and Flash Microcontroller Semiconductor Devices and Products Containing Same ("EPROMs")*, Inv. No. 337-TA-395, Order No. 25 (November 6, 1997)). A subpoena should be quashed if it imposes an undue burden on a third party. *EPROMs*, Order No. 25 at 2 (citing Fed. R. Civ. P. 45(c)(3)(A)(iv). Moreover, when faced with a motion to quash:

> Commission rules 210.34(a) and 210.34(a)(7) provide that the administrative law judge may make "any order that may appear necessary and appropriate for the protection of the public interest" and has the authority, "when justice requires," to protect a party or person from "annoyance, embarrassment, oppression, or undue burden or expense" . . . . The fact of non-party status may be considered with any motion to lim Cynthia Bright; Julie Mar-Spinolait.

*Certain Set-Top Boxes and Components Thereof*, Inv. No. 337-TA-454, Order No. 16 at 1-2 (July 2, 2001) (citing *Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993)). Atmel requests that the ALJ exercise this discretion and quash the subpoena at issue.

The subpoena at issue is overly broad and imposes an immense burden on Atmel. Furthermore, much of the information allegedly sought by the subpoena is irrelevant to this investigation. *See supra* note 1 at 2. Although counsel for STMicro, in an effort to assist Atmel in its search, has provided some insight into the scope of the subpoena, this guidance is insufficient to permit Atmel to adequately focus its search. For example, STMicro provided two articles from IEEE conferences that, to the best Atmel can tell, appear to discuss non-volatile memory products offered by SEEQ, a company acquired by Atmel years ago. See Declaration of Julie Mar-Spinola, attached as Exhibit C. However, all SEEQ products used non-volatile memory, so without identifying individual models, this does not limit Atmel's search. Additionally, the documents Atmel obtained from SEEQ with its acquisition were not indexed and were not archived by Atmel in a chronological or logical manner. Some of the SEEQ documents have been transferred to different locations for use by divisions within Atmel or to assist in certain Atmel litigation. Moreover, the cost of separating relevant, responsive documents from the far more numerous irrelevant documents would impose a substantial and costly burden on Atmel. Atmel should not be forced to incur such an expense, especially when it

4

is apparent that STMicro has not made the requisite effort to search for information available from public and commercial sources.

Before requiring a third party to search through almost two-decade old files, STMicro should be required to do its own searching of publicly available prior art. For example, Atmel has public product information, dating back to at least as long ago as 1998 in some instances, available on its website. In addition, there are commercial entities, such as Chipworks or I.C.E., that maintain historic product information on numerous memory devices, including those sold by Atmel, including datasheets and far more detailed technical analyses. Based on the very broad, unfocused nature of the requests in the subpoenas, it does not appear that STMicro has availed itself of these options. As a disinterested third party, Atmel should not be forced to do STMicro's work for it—particularly not considering the expense and time involved in conducting such a search.

Most importantly, STMicro's requests relate to highly confidential documents and information, including trade secrets, covering the past seventeen (17) years of Atmel integrated circuit memory device design development. Atmel considers the non-public information from SEEQ to be confidential. Furthermore to the extent that Atmel's products are included, the search would also be extremely broad. During the late 1980s and early 1990s (which is the focus of eight requests), virtually all of Atmel's business involved memory devices. Thus, the potential pool of information that would need to be searched is very large. Further, if any responsive documents do exist from SEEQ, none are readily available and all must be recalled from off-site storage. The same will likely be true for any documents from that time period for Atmel products. This will require an expensive, labor-intensive effort on the part of Atmel, which is already busy with its own litigation obligations, including the post-trial briefing for a four-patent

trial in Philadelphia, and two trials scheduled in the next two and half months, and another trial currently scheduled in August. As such, Atmel should not be required to conduct such an expensive and labor-intensive search.

Finally, if Atmel is ordered to conduct a narrowed search for public documents, it needs to be limited to public product and design information. As noted above, non-public product and design information should be excluded from the response because it by definition cannot be prior art. Finally, Atmel requests that the ALJ order STMicro to pay all costs incurred in responding to the subpoena, including attorneys' fees. As a disinterested third party, it should not have to bear the costs of responding to the subpoena, retaining counsel to assist it in this process, or searching its files to locate responsive documents.

### B. Categories 13 Through 15 Request Documents Discoverable From SanDisk

Document Request categories 13-14 seek documents related to any license agreement between SanDisk and Atmel that covers the '338 patent. *See* Ex. A at 6. Any license agreement between Atmel and SanDisk, or royalties paid pursuant to such an agreement, is available from a party, namely SanDisk. In addition, category 15 seeks all documents related to any prior art search or analysis made of the '338 patent. *See id.* Again, this appears to be an attempt by STMicro to have Atmel do its work for it. To the extent STMicro seeks prior art, this category is related to information available from public sources and, as such, Atmel should not be required to expend its resources to develop STMicro's invalidity case. Moreover, it is axiomatic that any patent analyses performed on behalf of Atmel would be subject to attorney-client and/or work product privilege protection, and thus not subject to discovery. For these reasons, STMicro's subpoena should be quashed.

### C. Atmel Should Not Be Required To Produce Documents Until STMicro Identifies All Individuals Who Have Signed Or Intend To Sign The Protective Order In This Investigation

The U.S. memory device industry is small, limited to a relatively few number of key companies, and highly competitive. For this reason, these companies often find themselves adverse to one another in litigation. To assuage Atmel's concern that documents produced in this investigation might be viewed by counsel or experts adverse to Atmel in a separate matter, counsel for Atmel contacted counsel for STMicro and requested a list of individuals who have signed or intend to sign the protective order in this investigation. *See* April 7, 2005, Email from Barbara Murphy to Joseph Baldwin, attached hereto as Exhibit D. Counsel for STMicro agreed to provide these names, but so far has failed to do so. Until Atmel receives a list of these names, it should not be required to produce any highly confidential documents and information.

In addition, Atmel requests that the parties serve it with copies of all subsequent subscriptions to the protective order, so that Atmel can remain informed about which experts, consultants, and other individuals may have access to its confidential information going forward. Atmel is not a party to this action, and is concerned that it will not be able to trace how any of its confidential information is used going forward. As noted above, Atmel has its own litigation matters, and needs to be able to ensure that its confidential information is not provided to experts or consultants who are already adverse to Atmel. Most importantly, Atmel needs to be able to track how any of its confidential information will be used.

### III. CONCLUSION

For the reasons set forth above, Atmel respectfully requests that the subpoena *ad testificandum* and subpoena *duces tecum* and *ad testificandum* be quashed.

Dated: April 11, 2005

Respectfully submitted,

/s/ Louis S. Mastriani
Louis S. Mastriani
Barbara A. Murphy
S. Alex Lasher
ADDUCI, MASTRIANI & SCHAUMBERG, L.L.P.
1200 Seventeenth Street, N.W.
Fifth Floor
Washington, DC 20036
Telephone: (202) 467-6300

*Counsel for ATMEL CORPORATION*

AT700405

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **MOTION OF THIRD PARTY ATMEL CORPORATION TO QUASH AND/OR LIMIT SUBPOENA AD TESTIFICANDUM AND SUBPOENA DUCES TECUM AND AD TESTIFICANDUM AND TO SHIFT COSTS INCURRED IN RESPONDING AND SUPPORTING MEMORANDUM AND PROPOSED ORDER (PUBLIC)** was served via First Class Mail, unless indicated otherwise, to the parties listed below, this 11th day of April 2005:

Marilyn R. Abbott, Secretary
U.S. International Trade Commission
500 E Street, S.W., Room 112A
Washington, DC 20436
**(VIA HAND DELIVERY – Original + 6 copies)**

The Honorable Paul J. Luckern
Administrative Law Judge
U.S. International Trade Commission
500 E Street, S.W., Room 119
Washington, DC 20436
**(VIA HAND DELIVERY – 2 copies)**

Juan S. Cockburn, Esq.
Office of Unfair Import Investigations
U.S. International Trade Commission
500 E Street, S.W., Room 401
Washington, DC 20436
**(VIA HAND DELIVERY)**

### Counsel for Complainant SanDisk Corporation

James C. Yoon, Esq.
WILSON SONSINI GOODRICH & ROSATI
11921 Freedom Drive, Suite 600
Reston, Virginia 20190-5634

Gary M. Hnath, Esq.
Star-shemah Bobatoon, Esq.
BINGHAM MCCUTCHEN LLP
1120 20th Street, N.W., Suite 800
Washington, DC 20036-3406
**(VIA HAND DELIVERY)**

Richard S. Taffet, Esq.
Eric F. Pierson, Esq.
BINGHAM MCCUTCHEN LLP
399 Park Avenue
New York, New York 10022-4689

**Counsel for Respondents**
<u>**STMicroelectronics N.V. and STMicroelectronics, Inc.:**</u>

James L. Quarles III, Esq.
William G. McElwain, Esq.
Michael D. Esch, Esq.
WILMER CUTLER PICKERING HALE AND
  DORR LLP
1455 Pennsylvania Avenue, N.W.
Washington, DC 20004
**(VIA HAND DELIVERY)**

William F. Lee, Esq.
WILMER CUTLER PICKERING HALE AND
  DORR LLP
60 State Street
Boston, Massachusetts 02109

_____
ADDUCI, MASTRIANI & SCHAUMBERG, L.L.P.
1200 Seventeenth Street, N.W., Fifth Floor
Washington, DC 20036

AT100005-pub

2