## UNITED STATES INTERNATIONAL TRADE COMMISSION
## WASHINGTON, D.C.

### Before the Honorable Paul J. Luckern

In the Matter of

CERTAIN NAND FLASH MEMORY CIRCUITS        Inv. No. 337-TA-526
AND PRODUCTS CONTAINING SAME

### MEMORANDUM IN SUPPORT OF THIRD PARTY ATMEL CORPORATION'S MOTION FOR RECONSIDERATION OF ORDER NO. 10, OR IN THE ALTERNATIVE, FOR INTERLOCUTORY REVIEW

Pursuant to Commission Rules of Practice and Procedure 210.15, third party Atmel Corporation ("Atmel") submits this memorandum in support of its motion for reconsideration of Order No. 10: Granting in Part and Denying in Part Atmel's Motion 526-3 to Quash. Alternatively, Atmel respectfully requests that the Administrative Law Judge ("ALJ") issue a determination pursuant to Commission Rule 210.24(b)(1) certifying his Order to the Commission for its review.

### I.    INTRODUCTION

On March 28, 2005, Atmel received two subpoenas from Respondents STMicroelectronics N.V. and STMicroelectronics, Inc. (collectively "STMicro") seeking a broad range of documents and testimonial discovery. Counsel for Atmel attempted to narrow the subpoenas by speaking with counsel for STMicro on multiple occasions in an effort to reduce the scope of the overly broad subpoena categories in order to minimize the burden to Atmel. In addition, because STMicro initially informed Atmel that it sought potentially invalidating prior art, which necessarily must be public, Atmel asked STMicro to limit the subpoena to public documents in order to avoid requiring Atmel to produce any confidential information. Despite



EXHIBIT
3

Atmel's efforts, counsel for STMicro was not cooperative, and Atmel was forced to file a motion

to quash and/or limit the subpoenas pursuant to Commission Rule 210.32(d), on April 11, 2005.

On April 19, 2005, STMicro filed a response to Atmel's motion to quash.  On April 20, 2005,

counsel for Atmel informed the ALJ's attorney advisor that it intended to file a short reply to

correct the inaccuracies in STMicro's brief and to respond to STMicro's previously undisclosed

contentions and documents, thereby creating a complete record upon which the ALJ could rule.

Without waiting for Atmel's reply, the ALJ issued Order No. 10 on April 22, 2005, and granted

in part and denied in part Atmel's motion.

Atmel respectfully moves the ALJ for reconsideration of his April 22, 2005, order for

three reasons: (1) the ALJ's order was not justified by STMicro's proffered reasons; (2) the

burden of the ALJ's ordered relief on Atmel in terms of time, money, and risk to its confidential

information substantially outweighs the potential value of the requested documents, especially in

light of STMicro's lack of diligence in seeking the information from public sources and/or

SanDisk; and (3) the ALJ's ordered relief is contrary to law and Commission policy.

Accordingly, Atmel's motion for reconsideration should be granted and Order No. 10 should be

vacated to the extent it requires Atmel to produce documents other than in response to Request

Nos.[1] 16 and 20, which Atmel has agreed to produce or has indicated do not exist.

---

[1] Order No. 10 utilized a different numbering format than the STMicro subpoenas.  Rather than
ordering Atmel to produce documents responsive to the initial document requests from the subpoenas
(Document Request Nos. 1-15), the ALJ included new numbered categories in the order (Request Nos.
16-21).

## II.  THE ALJ's ORDER

The ALJ ordered Atmel to make available for inspection and copying no later than the

close of business on May 4, 2005:

**Request No. 16**:  All Atmel Databooks from the late 1980's;[2]

**Request No. 17**:  All documents that are sufficient to show Atmel circuit designs conceived or developed prior to July 8, 1997;

**Request No. 18**:  For each circuit design responsive to Request 17 any existing documents sufficient to determine whether the two inverters operate as a One-Way Latch or a Two-Way Latch;

**Request No. 19**:  For each circuit design responsive to Request 17 any existing documents sufficient to identify the type and size of each transistor used to build: Inverter #1; Inverter #2; Transistor #1; Transistor #2; and all transistors connected to the input or output of Inverters #1 and #2;

**Request No. 20**:  All documents in existence and not subject to any privilege related to prior art analysis for, and invalidity studies made of, the '338 patent, including any analysis made available to SanDisk in the course of license negotiations or made available to anyone outside Atmel;[3] and

**Request No. 21**:  Documents sufficient to show the persons most knowledgeable about Requests 16 through 18.

*See* Order No. 10 at 8-9.  As explained below, this ordered relief is unduly burdensome and

unwarranted under the present circumstances.

Order No. 10 compels the production of all of Atmel's confidential circuit designs up

until July 1997, including, but not limited to those related to non-volatile memory.  While

Atmel's business was once limited to non-volatile memory, that is not true for the period

extending through July 1997.  For example, the ALJ's Request No. 17 requires Atmel to produce

all documents sufficient to show "Atmel circuit designs" conceived or developed prior to July

---

[2]  Atmel has agreed to produce copies of the two databooks in its possession from the late 1980's. *See* Declaration of Julie Mar-Spinola ¶ 4, which is attached hereto as Exhibit 1.

[3]  Atmel has confirmed that it has no such analyses or patent studies. *See* Ex. 1 ¶ 10.

1997. Order No. 10 at 8. This is far beyond anything in STMicro's overbroad subpoena, as it would include other, non-relevant parts of Atmel's business.[4] But, as explained below, even if the "circuit design" request were limited to non-volatile memory, it still would be extremely burdensome on Atmel while yielding very little information, if any, that would be relevant or admissible.

III. **ARGUMENT**

A. **STMicro's Proffered Reasons for the Alleged Relevance of the Documents and Information Cannot Legally Justify the Order**

Pursuant to Commission Rule 210.27(b), a party may obtain discovery regarding any matter, not privileged, that is relevant and appears reasonably calculated to lead to the discovery of admissible evidence. *See* 19 C.F.R. §210.27(b). Atmel respectfully submits that there is no legal justification for the ALJ's order regarding Requests 17-19 and 21. First, the order extends far beyond the scope of the subpoena to all of Atmel's products before July 1997. Second, STMicro's assertion that the information is relevant to the scope of the patent after re-examination is erroneous as a matter of law.

1. **The ALJ's Order Extends Far beyond STMicro's Requests**

STMicro's subpoenas sought comprehensive information about Atmel circuit designs in the field of non-volatile memory. *See* note 4, *supra*. The ALJ's order with respect to Request Nos. 17-19 and 21, however, extends much further. As noted above, Request No. 17 directs

---

[4] STMicro's subpoenas seek documents and information limited to non-volatile memory. *See* Attachment A to subpoena *duces tecum* and *ad testificandum* at 4-5 ("'Memory' means Read Only Memory (ROM), Programmable Read Only Memory (PROM), Erasable Programmable Read Only Memory (EPROM), Ultraviolet-erasable Programmable Read Only Memory (UVPROM), Electronically Erasable Read Only Memory (EEPROM), and any nonvolatile memory that uses floating gate transistors to store information."). The ALJ's ordered relief does not contain such limiting definitions. The origin of this change appears to be STMicro's suggestion to allegedly narrow the requests 10-12. *See* STMicroelectronics' Response to Motion of Third Party Atmel Corporation to Quash and/or Limit Subpoenas and to Shift Costs Incurred in Responding ("Response") at 6, n.4. STMicro's effort, however, actually resulted in the ALJ interpreting the requests to include all of Atmel's products through 1997.

Atmel to produce "[a]ll documents that are sufficient to show Atmel circuit designs conceived or developed prior to July 8, 1997." Order at 8. As written, Request No. 17 improperly covers all of Atmel's business, which by 1997 was not limited to non-volatile memory designs. To the contrary, by that time, Atmel's business included other semiconductor technologies such as microcontroller technology, application specific integrated circuits (custom semiconductor chips), and microprocessor cores. *See* Ex. 1 ¶¶ 3-4. Neither party has indicated that any of these technologies could be relevant in this investigation, yet, the circuit designs for all of these chips appear to be covered by the ALJ's order. There is no legal justification to compel the production of documents and information that cannot lead to the discovery of relevant or admissible evidence. *See* 19 C.F.R. § 210.27(b). Accordingly, while this overly broad language was likely inadvertent, the ALJ's order should nonetheless be vacated.

> **2. STMicro's Focus on What a Person of Ordinary Skill in the Art Would Understand Demonstrates Atmel's Information Is Legally Irrelevant**

In response to Atmel's motion to quash, STMicro argued that Document Request Nos. 10-12 in the subpoenas (which form the basis for Request Nos. 17-19 in the order) were relevant because they would inform what a person of ordinary skill in the art would have understood about Figure 16 of the patent and whether it could be a "one-way" latch during the time of the '338 proceedings and re-examination. *See* Response at 4. In addition, in its brief, STMicro stated that, "testimony from an Atmel engineer regarding the identified latch circuitry would go to establishing what those of skill in art make of the circuitry." Response at 6. The ALJ appears to have adopted this argument as a justification for issuing his order. *See* Order No. 10 at 6-7. These statements prompted the ALJ to order the production of "all documents that are sufficient to show Atmel circuit designs conceived or developed prior to July 8, 1997," the re-issue date of the patent after re-examination. Order at 8.

As detailed more fully below, Atmel submits that the ALJ's order with respect to Request Nos. 17 through 19 and 21 fails to account for relevant legal authority with regard to claim construction, extrinsic evidence and what should be considered when determining what a person of ordinary skill in the art would have known concerning the use of a latch. When that is taken into account, it becomes clear that Atmel's confidential circuit design information is neither relevant nor admissible as a matter of law for this purpose.

Claim construction begins with an analysis of the ordinary meaning of the disputed claim term(s). *See, e.g., Inverness Medical Switzerland GmbH v. Princeton Biomeditech Corp.*, 309 F.3d 1365, 1369 (Fed. Cir. 2002). "The touchstone for discerning the usage of claim language is the understanding of those terms among artisans of ordinary skill in the relevant art at the time of the invention." *Home Diagnostics, Inc. v. Lifescan, Inc.*, 381 F.3d 1352, 1355 (Fed. Cir. 2004). While the primary aids to supply the context for interpretation of disputed claim terms are in the intrinsic record (*e.g.*, patent specification and prosecution history), the Federal Circuit also acknowledges the relevance of extrinsic evidence in some circumstances. *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1309 (Fed. Cir. 1999) ("[C]onsultation of extrinsic evidence is particularly appropriate to ensure that [the court's] understanding of the technical aspects of the patent is not entirely at variance with the understanding of one skilled in the art."). This does not mean, however, that all forms of extrinsic evidence shed light on what would have been attributed to the terms of the claims by those of skill in the art. To properly be considered, the source of extrinsic evidence must "rise to the level of unbiased, contemporaneous reflection of the common understanding of the technical terms in question as to be considered a reliable source." *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1089 (Fed. Cir. 2003). The Federal Circuit has previously noted:

> Dictionaries, encyclopedias and treatises, *publicly available* at the time the patent is issued, are *objective* resources that serve as reliable sources of information on the established meanings that would have been attributable to the terms of the claims by those of skill in the art. . . . Indeed, these materials may be the most meaningful sources of information to aid judges in better understanding both the technology and the terminology used by those skilled in the are to describe the technology.

*Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1202-03 (Fed. Cir. 2002) (emphasis added). *See also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 (Fed. Cir. 1996) ("[P]rior art can often help to demonstrate how a disputed term is used by those skilled in the art.").

Unlike the types described by the Federal Circuit in *Texas Digital* and *Vitronics*, however, the documents requested by STMicro, and ordered to be produced by the ALJ, are not publicly available or the type of "objective resources" commonly used for claim construction. The documents comprise Atmel's confidential research and development of circuit designs, and STMicro has not offered any evidence or argument that Atmel's circuit designs could or would reflect common usage by persons of ordinary skill in the art during the relevant time period. *See ACTV*, 346 F.3d at 1089 (refusing to rely on papers from an industry working group because the papers were not designed to reflect common usage of terms). Inasmuch as STMicro's argument does not justify an order for all of Atmel's pre-July 1997 circuit design documents, that portion of the order was in error and should be reconsidered and vacated.

Assuming, *arguendo*, that Atmel's pre-July 1997 circuit design documents were relevant to the question of what a person of ordinary skill in the art would have understood during the period in question, STMicro has failed to allege, much less explain, why it could not obtain similar information from publicly available sources. *See Haworth, Inc. v. Herman Miller, Inc.*,

998 F.2d 975, 978 (Fed. Cir. 1993) (requiring party to seek discovery from party opponent before burdening non-party).

The Federal Circuit has frequently explained its preference for dictionaries, treatises and technical articles as sources for extrinsic evidence. *See Metabolite Labs., Inc. v. Laboratory Corp. of America Holdings*, 370 F.3d 1354, 1360 (Fed. Cir. 2004) ("Another excellent source for context for disputed terms is dictionary definitions and treatises."). Moreover, even if STMicro was unable to locate any publicly available source (there is no indication of this), it certainly has employees and experts that could testify as to what one of ordinary skill in the art would have understood during the time period of the '338 prosecution and reexamination proceedings. *See, e.g., Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1371 (Fed. Cir. 2004) ("Hartford had presented at least one expert skilled in the art of life insurance administration who stated that the phrase 'surrender value protected investment credits' would be indefinite to a person skilled in that field of art."); *Nazomi Comms., Inc. v. Arm Holdings, PLC*, 2005 WL 820491 *4 (Fed. Cir. April 11, 2005) ("[I]f further guidance is needed, [court may look] to extrinsic evidence, such as dictionaries and expert opinions."); *AFG Indus., Inc. v. Cardinal IG Co., Inc.*, 239 F.3d 1239, 1245-46 n.1 (Fed. Cir. 2001) ("Because O'Shaughnessy has been president of Cardinal since 1967, and his testimony provided a detailed technical description of Cardinal's products, it appears that O'Shaughnessy's testimony can be interpreted as that of a person of ordinary skill, and that his testimony provides a reliable indication of how people in his field refer to the terms 'layer' and 'barrier layer.'"). The fact that STMicro seeks, and the order compels, documents for use in claim construction that fall outside the list of acceptable extrinsic evidence (which may only be used under limited circumstances) is a reason to reconsider the order and quash Request Nos. 17-19 and 21 in their entirety. As explained further

below, even if the requests were limited to circuit designs for non-volatile memory prior to April 1988[5], the potential for responsive information does not approach a valid justification for imposing the extreme burden to Atmel in terms of time, money and risk to its confidential information.

**B.    Atmel Cannot Rely on STMicro to Protect Atmel's Confidential Information**

Counsel for STMicro has failed to provide any substantive information regarding the individuals who have signed or intend to sign the protective order, such as prior and present representations of listed experts.  On April 22, 2005, counsel for STMicro provided a list of names of signatories to the protective order.  STMicro did not, however, attach each person's curriculum vitae or a description of involvement in other litigation, an omission that should be immediately remedied.

In addition, STMicro's dismissive response to Atmel's concerns about confidentiality, raises serious doubts as to STMicro's future compliance with the ALJ's Order.[6]  For example, in its response brief, STMicro virtually ignores Atmel's confidentiality concerns.  Its only statement in this regard is that the "Protective Order in place in this case is sufficient to protect the

---

[5] To the extent STMicro seeks to uncover purportedly invalidating prior art for purposes of the reexamination of the '338 patent, this search is in error.  35 U.S.C. § 252 states: "The surrender of the original patent shall take effect upon the issue of the reissued patent, and every reissued patent shall have the same effect and operation in law, on the trial of actions for causes thereafter arising, as if the same had been originally granted in such amended form, but in so far as the claims of the original and reissued patents are substantially identical, such surrender shall not affect any action then pending nor abate any cause of action then existing, and the reissued patent, to the extent that its claims are substantially identical with the original patent, *shall constitute a continuation thereof and have effect continuously from the date of the original patent*." (emphasis added).  Because STMicro did not contend in its response that the claims of the '338 patent were <u>not</u> substantially identical after reexamination, the critical date for discerning prior art remains April 13, 1988.

[6] The ALJ ordered STMicro to notify Atmel of any individuals who later subscribe to the protective order.  *See* Order at 7.

confidential information of Atmel." STMicro Response at 7-8. For the reasons discussed below, this conclusory statement is clearly inadequate under the circumstances.

The existence of a protective order between STMicro and SanDisk does little to mitigate Atmel's confidentiality concerns or the likely injury to Atmel if its confidential information becomes public. This issue alone constitutes grounds to quash the subpoenas. Courts have held that protective orders are insufficient to protect the interests of third parties who have no means to ensure the confidential treatment of any discovery. *See Micro Motion v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1325 (Fed. Cir. 1990) ("It would be divorced from reality to believe that either party here would serve as the champion of [a third party] either to maintain the confidentiality designation or to limit public disclosure. . . [the third party] would, in fact, lose all control of the situation since disclosure of its information depends on the action by a court before whom it has no standing."). In this investigation, Atmel will not be served with future motions, briefs, and expert reports by the parties. Atmel also will not be present at the hearing to request that members of the public are excluded if its information is part of any testimony. Thus, Atmel will have no control over whether its information becomes public, even if inadvertently, through testimony at the hearing or in motions or briefs.

Additionally, even with the existing protective order that provides for information to be handled solely by outside counsel, Atmel will not have any ability to track its confidential information. Consistent with its practices for its own litigation matters, Atmel needs to know who has access to its confidential information, including any of the parties' consultants or experts. STMicro has not identified the prior or ongoing work experience of its experts and consultants in such a way as to enable Atmel to determine whether these experts have any

conflicts, even though it is required to do so by the protective order. Pursuant to paragraph 15 of the protective order:

> no less than 10 days prior to the initial disclosure to the proposed expert of any confidential information submitted in accordance with paragraph 2, the party proposing to use such expert shall submit in writing the name of such proposed expert and his or her educational and employment history to the supplier.

Order No. 2, ¶ 15. It is unclear, however, whether SanDisk and its experts would be subject to the procedures outlined in paragraph 15, especially if the confidential information is used merely to rebut STMicro's contentions. Moreover, the parties may retain additional experts between now and the hearing, which is currently set for August 9, 2005. Atmel needs to be able to be certain that its confidential information is not provided to experts or consultants who are already adverse to Atmel in its own various litigation matters, including patent cases. Although the protective order provides suppliers of confidential information the opportunity to object to disclosure to certain experts, providing such notice is not typically the practice in Section 337 investigations. Atmel also needs comfort about the continued confidential treatment of its materials given the fact that its competitors are parties, and they also are involved in litigation beyond the ITC action in a District Court action in the Eastern District of Texas over this same patent. *See Certain SDRAMS, DRAMS, ASICS, RAM and Logic Chips, Microprocessors, Microcontrollers, Processes for Manufacturing Same,* Inv. No. 337-TA-404, Order No. 6 (Jan. 6, 1998) ("Particularly where the supplier is a third party who is involved in neither the Commission investigation nor the district court case, it is important that the supplier be made aware that treatment of confidential information would be governed by the district court's protective order and not that of the Commission."). Because Atmel has no assurances even under the existing protective order that the confidentiality of its information will be maintained

in this action or beyond, it should not be ordered to produce any confidential information, or at least not without additional safeguards to address its concerns.

C.    **The ALJ's Ordered Relief is Overly Burdensome and Unwarranted in Light of STMicro's Lack of Diligence in Seeking the Requested Information from Public Sources and/or SanDisk**

        1.    **The Cost Associated with the ALJ's Ordered Relief is Overly Burdensome**

As written, the ALJ's order will impose a significant and costly burden on Atmel and its employees. Searching for documents and information responsive to STMicro's requests would necessitate an expensive two-step investigation. First, Order No. 10 requires Atmel to produce documents responsive to Request Nos. 17-19, which relate to "[a]ll documents sufficient to show Atmel circuit designs conceived or developed prior to July 8, 1997." Order No. 10 at 8. These requests literally encompass the entire period from Atmel's founding in 1984, to July 8, 1997 – approximately thirteen (13) years. *See* Ex. 1 ¶¶ 3-4. During the periods in which the ALJ has ordered to Atmel to produce documents, *i.e.*, "the late 1980's" and "prior to July 8, 1997," virtually 100% of Atmel's business related to circuit designs, including products other than non-volatile memory designs; hence, virtually 100% of Atmel's documents would have to be inspected for responsive documents. *Id.*

The burden resulting from the expansive scope of these requests is compounded by the fact that Atmel generally maintains an informal document retention policy of six to eight years. *See* Ex. 1 ¶ 6. Documents are sent to off-site storage routinely, depending on several factors including, but not limited to, need and volume, as well as when employees leave the company. *Id.* Further, the cataloging of many of these documents, as they are shipped off-site, is varied and Atmel has no ability to confirm the existence or non-existence of specific documents short of a manual search of each and every storage box. *Id.* Even further, many engineers or other

employees may keep their own personal archive of documents depending on the projects they have, or will be working on for Atmel. *Id.* Thus, to comply with the ALJ's order, Atmel would have to inspect each and every box kept in off-site storage that can be identified as containing documents within the relevant time periods, as well as each and every engineer's personal archive for responsive documents. *Id.* Under these circumstances, it would take Atmel several weeks to months to complete its search for documents falling within the relevant time period, even if the requests were limited to non-volatile memory designs. *See* Ex. 1 ¶ 7. This search, which does not contemplate the more specific review for responsive documents, would cost Atmel at least hundreds of personnel hours and at least tens of thousands of dollars. *Id.* Atmel simply does not have the resources to dedicate, generally, and especially, to a legal dispute to which it is neither directly nor indirectly a party. *Id.*

Additionally, Order No. 10 requires Atmel to produce any existing documents sufficient to: (1) show whether the inverters operate as a one-way or two-way latch; and (2) identify the type and size of each transistor. *See* Order No. 10 at 8. In this regard, to determine whether Atmel's documents are responsive, Atmel would have to dedicate several engineers, technical personnel, and even outside consultants to evaluate each and every circuit design. *See* Ex. 1 ¶ 8. This second tier analysis would easily take several hundreds more personnel and consultant hours, and tens of thousands more dollars. *Id.* None of STMicro's arguments about claim construction or its vague pronouncements about the potential of Atmel having invalidating prior art comes close to justifying Atmel's burden.

Finally, in response to Request No. 21, assuming that one could discern the persons most knowledgeable about the requested documents from the documents themselves, there is no way to craft a reasonable search for documents that identify such persons. The request presumes

someone knows the answer in advance.  However, the documents relevant to circuit designs may or may not identify the persons most knowledgeable.  Given that people have retired or left the company, Atmel will have no way to know whether it has reasonably complied with the request, even if it finds the circuit designs and other materials identified in Request Nos. 17-19.

Concerning the cost of this undertaking, the ALJ's order provides that "[r]easonable costs should be made available to Atmel from ST for any searching in response to this order" and "Atmel, if necessary, has the opportunity to file a motion setting forth the basis it has had for the reasonable costs and ST will have the opportunity to respond, if Atmel and ST cannot agree on a reasonable cost." Order at 9.  The order does not, however, provide for costs and attorneys fees related to filing the referenced motion, which is significant because such motions are very expensive and time consuming to prepare.  Thus, Atmel respectfully submits  the proposed remedy is insufficient.  Atmel may spend a significant amount of time and money in trying to recover its costs on top of what it would need to comply.  The ALJ's statement also invites STMicro to debate the reasonableness of Atmel's effort to comply with the ALJ's order, which will only increase Atmel's costs and burden.

### 2. The ALJ's Ordered Relief is Unwarranted in Light of STMicro's Lack of Diligence in Seeking the Requested Information from Public Sources and/or SanDisk

STMicro never satisfied its burden that it could not find invalidating prior art from another source before burdening Atmel.  In its response to Atmel's motion to quash, STMicro attempts to explain the purported relevance of the documents and information it seeks from Atmel and how these documents are allegedly not obtainable from another source. *See* Response at 1-6.  Atmel also does not dispute the fact that SanDisk Corporation contends that STMicro's NAND memory products infringe certain claims of U.S. Patent No. 5,172,338 ("the '338 patent").  Nor does it dispute that SanDisk previously litigated the '338 patent before the

Commission. Of course, none of these points changes the analysis of the burden here, and STMicro's complete failure to ensure that it had even sampled, much less exhausted, other sources before asking a third party to conduct its prior art search.

What STMicro's response clearly reveals is that STMicro, and now the ALJ, is asking Atmel to conduct a survey of all circuit designs prior to 1997. Even if it were limited to non-volatile memory designs, it would still constitute an incredible, unfettered fishing expedition. STMicro's identification of six products in its brief (Response at 3), does not narrow the subpoena, and will not narrow Atmel's search. STMicro has not started with a list of potentially invalidating prior art products that it is solely interested in. Instead, STMicro has identified at least six products that it speculates may have some potential as prior art. Furthermore, STMicro's admitted failure to expend the requisite effort to search for information available from public and commercial sources in order to obviate or narrow Atmel's search constitutes grounds to quash the subpoenas.

Rather than explain how it "has endeavored to find information that will further help Atmel minimize the searching necessary," STMicro offers suggestions as to how <u>Atmel</u> should try and limit its search.[7] Response at 6-7 ("There are thus many avenues available to Atmel to quickly focus its search. . . ."). Of course, this approach constitutes an admitted abuse of the

---

[7] STMicro erroneously claims that Atmel declined its offer to "review datasheets published through 1990 to identify a limited subset of products for further investigation." STMicro Response at 6. This statement suggests that STMicro offered to review all of Atmel's datasheets and that Atmel refused. In fact, in discussions about limiting the subpoena, counsel for STMicro inquired as to whether Atmel's website contained a datasheet archive for the older datasheets he had previously been unable to find. Atmel's counsel responded that they would investigate whether these materials were available on the Atmel website.

The declaration of STMicro's counsel also gives the impression that there was only one phone conversation between the parties related to the subpoenas and that, despite Atmel's pledge to cooperate, it simply filed a motion to quash. *See* Declaration of Joseph R. Baldwin, Exhibit E to Response. Atmel's counsel, however, had numerous telephone conversations with STMicro's counsel in efforts to limit and understand the scope of the subpoenas, unfortunately to little avail.

Commission's rules to exhaust other alternatives first. *See, e.g., Certain Optical Waveguide Fibers*, Inv. No. 337-TA-189, Request for Judicial Enforcement of Non-Party Subpoena, GC-84-179 (Oct. 25, 1984). *See also Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993) (requiring party to seek discovery from party opponent before burdening non-party). Further, as a purported justification for requiring non-party Atmel to undertake a time-consuming and expensive search for unspecified documents and information that may be relevant, STMicro states that one alternative – reverse engineering of publicly available parts – would be too expensive. *See* Response at 5. It is notable that STMicro has still apparently not even contacted the numerous commercial engineering laboratories that specialize in technical analysis of semiconductor devices to determine whether any relevant Atmel memory devices have already been reverse engineered. Nor has STMicro contacted commercial entities, such as Chipworks or I.C.E., that maintain historic product information on numerous memory devices, including those sold by Atmel. Simply put, STMicro wants Atmel to do its work for it. Inasmuch as STMicro has not been diligent in finding relevant literature about Atmel/SEEQ parts, which may potentially be invalidating prior art,[8] has failed to seek information from technical consulting engineering houses and/or public archives that maintain commercial databases on these parts and has refused to obtain the same information on its own through reverse engineering, the subpoenas should be quashed. *See* Atmel Memorandum at 5.

Finally, STMicro's cited legal authority does not justify the burden on Atmel. In response to Atmel's explanation regarding the difficulty in locating documents related to SEEQ,

---

[8] STMicro identified for the first time in its Response, specific model numbers of Atmel and SEEQ products. *See* Response at 3. This fact evinces STMicro's lack of diligence in undertaking an initial search for information before contacting Atmel. On several occasions, counsel for Atmel requested that STMicro identify specific part numbers. STMicro was unable to do so. Furthermore, as noted above, STMicro has not suggested that Atmel may limit its search to designs for these six products. Thus, STMicro is not offering any limit at all.

STMicro states that "one cannot refuse to comply with a validly issued subpoena simply because they have chosen bad record management practices." Response at 7 (citing *Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 611 (D. Neb. 2001)). STMicro's reliance on *Wagner*, however, is misplaced. In *Wagner*, the documents in question were being sought from a <u>party</u> to the litigation. 208 F.R.D. at 611. Under federal and Commission authority, a third party's responsibility in discovery is much different than that of a party to the litigation. *See, e.g., Certain Optical Waveguide Fibers*, Inv. No. 337-TA-189, Request for Judicial Enforcement of Non-Party Subpoena, GC-84-179 (Oct. 25, 1984) (citing *Hecht v. Pro-Football, Inc.*, 46 F.R.D. 605 (D.D.C. 1969) and *Premium Serv. Corp. v. Sperry Hutchinson Co.*, 511 F.2d 225 (9th Cir. 1975)). *See also Certain Set-Top Boxes and Components Thereof*, Inv. No. 337-TA-454, Order No. 16 at 1-2 (July 2, 2001) (citing *Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993) "The fact of non-party status may be considered with any motion to limit."); *Haworth, Inc.*, 998 F.2d at 978 (requiring party to seek discovery from party opponent before burdening non-party).[9] The court in *Premium* stated:

> Compliance would have required extensive sifting and analysis by Walker-Scott employees . . . . The district court could reasonably have found, without abusing its discretion, that Premium Service's need for these documents was not sufficient to outweigh the burden and invasion of corporate privacy which would have resulted to Scott and Walker-Scott, *especially since they were not parties to the suit.*

511 F.2d at 229. As previously discussed, STMicro's requests, and the ALJ's Order, would force Atmel to undertake similar "sifting and analysis."

For the reasons set forth above and in its Motion to Quash, Atmel respectfully requests that its motion be granted and Order No. 10 be vacated as to Request Nos. 17-19 and 21.

---

[9] STMicro concedes this point by not responding to Atmel's arguments in regard to Document Request Nos. 13 through 15. *See* Atmel Memorandum at 6.

**D.    Should the ALJ Deny Atmel's Motion for Reconsideration,
the Order Should Be Certified for Interlocutory Review**

Alternatively, should the ALJ deny reconsideration of Order No. 10, the order should be

certified to the Commission for interlocutory review. Certification for interlocutory review is

appropriate when:

> 1.    the ruling involves a controlling question of law or policy
>        as to which there is substantial ground for difference of
>        opinion; and
>
> 2.    either an immediate appeal from the ruling may materially
>        advance the ultimate completion of the investigation or
>        subsequent review will be an inadequate remedy.

19 C.F.R. § 210.24(b)(1).

Atmel's request for interlocutory review involves three controlling questions of law or

policy as to which there is a substantial ground for difference of opinion. The first is whether a

third party may obtain plenary review of an order denying its motion to quash discovery

requests. In this investigation, the ALJ denied Atmel's motion to quash in part and ordered

production of certain documents and reserved the right to allow STMicro to apply again for a

deposition. Pursuant to the Commission Rules and common practice, Atmel may file a motion

for reconsideration and/or file a request with the ALJ to certify the issue in dispute to the

Commission. *See* 19 C.F.R. § 210.24(b). If both pleadings are subsequently denied, Atmel will

have no other avenue to appeal the ALJ's substantive findings.[10] This outcome directly

implicates Atmel's due process rights and, thus, an important policy issue.

---

[10] Under the Commission Rules, even if Atmel waited until after an initial determination was
issued in this investigation, it would still be unable to petition the Commission for review. *See* 19 C.F.R.
§ 210.43(a) ("[A]ny *party* to an investigation may request Commission review of an initial determination .
. .") (emphasis added). Moreover, an eventual enforcement proceeding in district court may not even
provide Atmel with adequate review. *See U.S. Int'l Trade Comm'n v. ASAT, Inc.*, 355 F. Supp. 2d 67, 72
(D.D.C. 2004) ("Under the rules governing the conduct of investigations by the ITC, and in contrast to
subpoenas issued by this Court itself under the Federal Rules of Civil Procedure, the administrative

The second concerns the duty of a party to seek information and documents from party opponents and public sources before issuing similar or duplicative discovery to a third party. A corollary to this issue concerns how much effort the party seeking discovery must expend in order to satisfy its duty. It is well established under federal and Commission authority that a party may only seek discovery from third parties if it is otherwise unobtainable. Therefore, a determination as to the sufficiency of STMicro's efforts to obtain the information it seeks from public sources and/or SanDisk, is a controlling question of law or policy.

The third issue involves Atmel's ability to protect the confidential nature of its documents and information. As previously discussed, Atmel has no means to ensure that the confidential treatment of any discovery will be maintained – notwithstanding the existence of a protective order issued in this investigation. Moreover, if the record is transferred to district court under 19 U.S.C. § 1659(a), the subsequent treatment of confidential information would be governed by the district court's protective order and not that of the Commission. *See Certain SDRAMS, DRAMS, ASICS, RAM and Logic Chips, Microprocessors, Microcontrollers, Processes for Manufacturing Same,* Inv. No. 337-TA-404, Order No. 6 (Jan. 6, 1998). District court protective orders generally provide for different levels of confidential information, including, access to materials by in-house counsel and experts. Moreover, in many instances in district court, at the insistence of the judge, information once designated as confidential becomes part of a public hearing record. Atmel, as a third party, would not be present[11] or potentially have standing to object to

---

subpoena at issue here bears the imprimatur of the administrative law judge; this Court's role is not to issue the subpoena but simply to aid in its enforcement.").

[11] Even if Atmel had access to the pleadings and hearings before the Commission and/or district court, Atmel should not be forced to expend its time and resources to monitor the proceedings.

the dissemination of its documents and information under a district court protective order. This result could be catastrophic for Atmel and implicates a significant controlling question of policy.

It is clear that an immediate appeal from the ruling may materially advance the ultimate (and timely) completion of the investigation or subsequent review will be an inadequate remedy. If STMicro's requests are found to be unduly burdensome and the ALJ's order is vacated, the matter is over. Moreover, as noted above, Atmel has no ability to seek further review. Accordingly, certification for interlocutory review is warranted and should be granted.

## IV.    CONCLUSION

For the reasons set forth above, third party Atmel respectfully requests that its motion for reconsideration be granted and the ALJ issue an order vacating Order No. 10, to the extent it denied Atmel's motion, and quashing the subpoenas in question. Alternatively, Atmel requests that the order be certified to the Commission for its review.

Dated: May 3, 2005                    Respectfully submitted,

                                      Louis S. Mastriani
                                      Barbara A. Murphy
                                      S. Alex Lasher
                                      ADDUCI, MASTRIANI & SCHAUMBERG, L.L.P.
                                      1200 Seventeenth Street, N.W.
                                      Washington, DC 20036
                                      Telephone: (202) 467-6300

                                      *Counsel for ATMEL CORPORATION*

AT701105

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **THIRD PARTY ATMEL CORPORATION'S MOTION, MEMORANDUM AND [PROPOSED] ORDER FOR RECONSIDERATION OF ORDER NO. 10, OR IN THE ALTERNATIVE, FOR INTERLOCUTORY REVIEW (PUBLIC)** was served via First Class Mail, unless indicated otherwise, to the parties listed below, this 3rd day of May 2005:

Marilyn R. Abbott, Secretary
U.S. INTERNATIONAL TRADE COMMISSION
500 E Street, S.W., Room 112A
Washington, DC 20436
**(VIA HAND DELIVERY – Original + 6 copies)**

The Honorable Paul J. Luckern
ADMINISTRATIVE LAW JUDGE
U.S. INTERNATIONAL TRADE COMMISSION
500 E Street, S.W., Room 119
Washington, DC 20436
**(VIA HAND DELIVERY – 2 copies)**

Juan S. Cockburn, Esq.
OFFICE OF UNFAIR IMPORT INVESTIGATIONS
U.S. INTERNATIONAL TRADE COMMISSION
500 E Street, S.W., Room 401
Washington, DC 20436
**(VIA HAND DELIVERY)**

### Counsel for Complainant SanDisk Corporation

James C. Yoon, Esq.
WILSON SONSINI GOODRICH & ROSATI
11921 Freedom Drive, Suite 600
Reston, Virginia 20190-5634

Gary M. Hnath, Esq.
Star-shemah Bobatoon, Esq.
BINGHAM McCUTCHEN LLP
1120 20th Street, N.W., Suite 800
Washington, DC 20036-3406
**(VIA HAND DELIVERY)**

Richard S. Taffet, Esq.
Eric F. Pierson, Esq.
BINGHAM McCUTCHEN LLP
399 Park Avenue
New York, New York 10022-4689

**Counsel for Respondents**
**STMicroelectronics N.V. and STMicroelectronics, Inc.:**

James L. Quarles III, Esq.
William G. McElwain, Esq.
Michael D. Esch, Esq.
WILMER CUTLER PICKERING HALE AND
    DORR LLP
WILMER CUTLER PICKERING HALE AND DORR LLP
1899 Pennsylvania Avenue, N.W.
Washington, DC 20006
(VIA HAND DELIVERY)

William F. Lee, Esq.
WILMER CUTLER PICKERING HALE AND
    DORR LLP
60 State Street
Boston, Massachusetts 02109

ADDUCI, MASTRIANI & SCHAUMBERG, L.L.P.
1200 Seventeenth Street, N.W., Fifth Floor
Washington, DC  20036

AT100005-pub

2