UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, D.C.

Before the Honorable Paul J. Luckern

| | |
|---|---|
| In the Matter of<br><br>CERTAIN NAND FLASH MEMORY CIRCUITS<br>AND PRODUCTS CONTAINING SAME | Inv. No. 337-TA-526 |

## SUPPLEMENTAL DECLARATION OF JULIE MAR-SPINOLA

I, Julie Mar-Spinola, state and declare as follows:

1. I am Vice President of Global Affairs-Litigation & Intellectual Property for Atmel Corporation ("Atmel"). I make this declaration of my own personal knowledge, except where noted herein, and if called as a witness, I could and would testify competently thereto.

2. On April 11, 2005, I submitted a declaration in support of Third Party Atmel Corporation's Motion to Quash and/or Limit Subpoena *Ad Testificandum* and Subpoena *Duces Tecum* and *Ad Testificandum* and to Shift Costs Incurred in Responding, which I understand was filed with the International Trade Commission on April 11, 2005 and which I incorporate hereto by reference.

3. To appreciate Atmel's objections to STMicro's discovery and now to the ALJ's Order No. 10, a brief history of Atmel is appropriate. Atmel Corporation was founded in 1984, with its business in the design, manufacturing and marketing of advanced semiconductors, including advanced logic, nonvolatile memory, mixed signal and RF integrated circuits. During the periods in which the ALJ has ordered Atmel to produce "[a]ll documents sufficient to show Atmel circuit designs conceived or developed prior to July 8, 1997..." virtually 100% of Atmel's

EXHIBIT 4

business related to "circuit designs"; hence, virtually 100% of Atmel's documents for the ordered period of time would have to be inspected for responsive documents.

4. I understand that Order No. 10 requires Atmel to produce "[a]ll Atmel Databooks from the late 1980's". Subject to Atmel's objections to this discovery request, on or about April 29, 2005, I conducted a search for such databooks. I found only two databooks related to non-volatile memory products in Atmel's possession from the late 1980's. Atmel will provide a copy of these databooks to STMicro, at STMicro's expense, by close of business on May 4, 2005.

5. Order No. 10 further requires Atmel to produce documents responsive to Request Nos. 17-19, which relate to "[a]ll documents sufficient to show Atmel circuit designs conceived or developed prior to July 8, 1997." As previously stated, the scope of this particular part of Order No. 10, literally encompasses thirteen (13) years of Atmel's entire document repository. Further, it includes products other than non-volatile memory designs because the cut-off date is in 1997. For example, it would include circuit designs related to microcontroller products, application specific integrated circuits, and microprocessor cores.

6. Generally, Atmel maintains an informal document retention policy of six to eight years. Documents are sent to off-site storage routinely, depending on several factors including but not limited to, need and volume, as well as when employees leave the company. The cataloging of many of these documents, as they are shipped off-site, is varied with no ability to confirm the existence or non-existence of specific documents short of a manual search of each and every box in storage. Moreover, many engineers or other employees may keep their own personal archive of documents depending on the projects that they have, are or will be working on for Atmel. Thus, to comply with the ALJ's Order, Atmel would have to inspect each and every box kept in off-site storage that can be identified as containing documents within the

relevant periods of time, as well as each and every engineer's personal archives for responsive documents. With respect to the latter, I have determined that depending on the engineer, it would take him/her several days and tens of hours to go through his/her files just to gather the documents. This estimate does not include the additional days and hours for someone to analyze these gathered documents to determine whether they are responsive to the Order.

7. Based on the foregoing facts, and from what I understand to be the scope of Order No. 10, it would take Atmel several weeks to months to complete its search for documents falling within the relevant time period, even if the requests were limited to non-volatile memory designs. This search—which does not contemplate the more specific review for responsive documents—would cost Atmel at least hundreds of personnel hours and at least tens of thousands of dollars. Atmel simply does not have these resources to dedicate, generally, and especially to a legal dispute to which it is neither directly nor indirectly a party.

8. I also understand that Order No. 10 requires Atmel to produce any existing documents sufficient to: (1) show whether the inverters operate as a one-way or two-way latch; and (2) identify the type and size of each transistor. In this regard, to determine whether Atmel's documents are responsive, Atmel would have to dedicate several engineers, technical personnel, and even outside consultants to evaluate each and every circuit design.

9. This second tier analyses would easily take several hundreds more personnel and consultant hours, and tens of thousands more dollars.

10. I understand that Order No. 10 requires Atmel to produce all documents in existence and not subject to any privilege related to prior art analysis for, and invalidity studies made of, the '338 patent, including any analysis made to SanDisk in the course of license

3

negotiations or made available to anyone outside of Atmel. To the best of my knowledge, no such documents exist.

I declare under penalty of perjury that the foregoing is true and correct and that this Declaration was executed at ___San Jose___, California on May 3, 2005.

*/s/ Julie Mar-Spinola*
Julie Mar-Spinola

AT701205