UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, D.C.

**Before the Honorable Paul J. Luckern**

| | |
|---|---|
| In the Matter of<br><br>CERTAIN NAND FLASH MEMORY CIRCUITS AND PRODUCTS CONTAINING SAME | Inv. No. 337-TA-526 |

### DECLARATION OF BARBARA MURPHY

I, Barbara A. Murphy, state and declare as follows:

1. I am a partner in the law firm of Adduci, Mastriani & Schaumberg, L.L.P., which is counsel to Atmel Corporation ("Atmel"), a non-party to this investigation, for purposes of responding to subpoenas issued in the above-referenced investigation. I make this declaration of my own personal knowledge, except where noted herein, and if called as a witness, I could and would testify competently thereto.

2. On numerous occasions since the subpoenas issued to Atmel in late March 2005, I have spoken with lawyers at Wilmer Cutler Pickering Hale and Dorr, counsel to STMicroelectronics N.V. and STMicroelectronics, Inc. ("STMicro") to discuss the parameters of the subpoena itself, as well as Orders 10 and 11, which issued in response to Atmel's motion to quash the subpoena and motion for reconsideration of Order 10, respectively. This declaration is submitted in support of Atmel's opposition to STMicro's Motion to Request Judicial Enforcement of Orders 10 and 11 ("STMicro's Motion for Enforcement").

3. As set forth in Atmel's Motion to Quash and Motion for Reconsideration, Atmel considered the subpoenas (and ensuing Orders 10 and 11) to be overly broad and extremely burdensome on Atmel in terms of the amount of information requested, the volume of documents



implicated by the search and the time within which such search and production were required. It was not until after Order 11 issued (after Atmel's Motions to Quash and for Reconsideration) that STMicro limited the focus of the subpoenas to three specific part numbers.

4. STMicro's Motion for Enforcement gives the impression that Atmel and its counsel were intentionally dilatory and unresponsive to STMicro's efforts to enforce the subpoena, especially in terms of providing an estimate as to how long it would take to locate relevant documents related to the three part numbers that STMicro agreed on May 17, 2005 it would limit the scope of Order No. 11. To the contrary, I personally informed counsel for STMicro that Atmel was attempting to quantify the search time, but without actually beginning the search, no estimate could be provided. Moreover, I indicated that until Atmel was successful in locating responsive documents during its search, it was similarly not possible to estimate how long the search would actually take. I specifically stated that, even with STMicro's limitation, it still may be like looking for a needle in a haystack—Atmel was trying to determine how easy it would be to find things related to the three products among all their records. This statement, including the phrase that "I was sorry if that was not the answer that STMicro wanted, but it was the only answer I could provide" was neither obstructionist nor confrontational, but merely accurate. These statements are also consistent with Atmel's prior representations about the manner in which its older files were maintained, the length of time that would be required to conduct a search of these files, and the burden associated with the search for them.

5. On June 2, 2005, only *three business days* after the date ordered for compliance with Order 11, I indicated by letter to Mr. Joseph Baldwin (attached as Exhibit D to STMicro's Motion for Enforcement) that Atmel had in fact located responsive documents related to two of the three specific Atmel parts, which Atmel was prepared to provide to STMicro as long as

certain extra safeguards had been implemented. In this same letter, I informed him that there was also a larger volume of documents that contained information on Seeq parts, which Atmel was prepared to produce for inspection and copying, and which were potentially responsive to Order No. 11 and STMicro's subsequent limitation to Seeq Part No. 55B33H. These documents were identified in Atmel's search conducted *after* STMicro agreed to limit Order 11 to three specific part numbers, one of which was a Seeq product.

6. Between June 2 and June 10, I exchanged correspondence with and conducted telephone conversations with Joseph Baldwin, counsel for STMicro, in efforts to resolve the protective order issues and to arrange for an appropriate time and place for production of Atmel's documents, both those that had already been copied as well as those that would be produced for inspection.

7. My letter of June 13, 2005, (attached as Exhibit H to STMicro's Motion for Enforcement) accurately summarized the status of negotiations between Atmel and STMicro to come to an agreement to protect Atmel's confidential information from inappropriate public disclosure. As set forth in that letter, and reiterated in my letters of June 28 and 30, 2005 (attached as Exhibit H to STMicro's Motion for Enforcement, respectively) I believed that the parties had agreed on most of the additional safeguards Atmel requested to protect its confidential information.

8. Following my letters of June 28 and 30, STMicro made no efforts to contact Atmel's counsel to finalize the safeguards that Atmel had requested. Instead, STMicro chose to institute motions practice, waiting until July 11, 2005, to file the instant Motion for Enforcement.

9. Atmel remains prepared to provide the documents related to Atmel parts AT28C256 and AT27C1024 as soon as the protective order issues are resolved. Atmel remains

willing to provide for inspection and copying the 20-25 boxes of Seeq documents identified in my letters of June 2 and 13. Atmel expects that these boxes of documents can be available for inspection within two-three business days of receiving written notice that the safeguards Atmel requested are in place.

10. Atmel demanded payment in advance of providing the remaining copies of documents responsive to STMicro's May 17th limitation because STMicro had refused to pay the full amount of the expenses Atmel had incurred in copying the initial set of documents produced on May 4, 2005. Once STMicro finally did proffer payment (by check dated June 10, 2005) for the first set of materials, withholding a certain amount it unilaterally determined constituted an overcharge, the check that was provided to cover these costs was rejected by the law firm's bank. My firm presented the check twice for payment, and it was rejected twice. My recitation of these facts is accurately reflected in my June 28th letter to Mr. Baldwin, attached as Exhibit K to STMicro's Motion for Enforcement.

I declare under penalty of perjury that the foregoing is true and correct and that this Declaration was executed at Washington, D.C. on July 14, 2005.

_____
Barbara A. Murphy

AT701605.doc

4